Harry T. Nusbaum, J.
In this summary proceeding to evict the tenant for nonpayment of rent, the tenant, represented by the Legal Aid Society, has moved for an order permitting her to implead the Commissioner of the Department of Social Services as a party to this proceeding. An application of similar import has been made in another pending proceeding and I have been informed by some of my colleagues that similar applications have been made unsuccessfully in the recent past.
*966 The importance of the application, although procedural in nature, is attested to by the voluminous briefs submitted by both sides and the appearance amicus curiae of the Community Action For Legal Services, Inc., a nonprofit law firm which, in the main, represents low-income persons in welfare and landlord and tenant matters.
The Rosetta Stone which the respondent hopes will provide the key for an interpretation permitting the requested impleader is section 110 of the New York Civil Court Act. This section, recently enacted, provides generally for the establishment of a Housing Part “ devoted to actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards ’ ’ gives this court jurisdiction over all actions and proceedings initiated under article 7-A of the Real Property Actions and Proceedings Law and more specifically provides the following, under subdivision (d) thereof:
‘1 In any of the actions or proceedings specified in subdivision (a) and on the application of any party, any city department or the court, on its own motion, may join any other person or city department as a party in order to effectuate proper housing maintenance standards and to promote the public interest. ’ ’
The question posed is whether the Legislature in enacting the new Housing Court Act intended to expand this court’s jurisdiction, at least with respect to housing, to include what is in effect a review of the findings of an administrative body, previously reviewable only by means of an article 78 proceeding.
I am of the opinion that such was the intent and purpose of the legislative enactment.
I am not here and now concerned with the making of any finding in connection with the legality, validity or reasonableness of the determination made by the Department of Social Services as to the eligibility of the respondent for emergency assistance. What I am concerned with is the final solution of a problem which may vitally affect the fast dwindling housing stock in the City of New York.
The Department of Social Services is the rent-paying agent of the tenants in thousands of housing units in the City of New York. This is a reality which the Judges sitting in the Housing Part face every day and I am wholly in accord with the findings made by the court in the case of Sessa v. Blakney (71 Misc 2d 432) and Blackman v. Walker (65 Misc 2d 138). In those cases, decided even before the effective date of the Housing Court Act, the court recognized this reality and the necessity of determining the department’s liability in the pending summary proceedings. *967 The decisions were based upon findings, (1) that the provisions of CPLR 1007 and section 747 of the Real Property Actions and Proceedings Law, permitted impleader in a summary proceeding and, (2) that the interests of justice would best be served by such impleader as the Department of Social Services which had been paying the rent was the real party in interest (Mount Sinai Hosp. v. Brinn, 73 Misc 2d 1; Knickerbocker Hosp. v. Downing, 65 Misc 2d 278).
In several unreported decisions rendered by Judges of this court prior to the enactment of the Housing Court Act, among which was one of my own, motions to implead the Department of Social Services were denied on the grounds that such impleader would unduly delay the disposition of the summary proceedings and that this court lacked the jurisdiction to review or correct an administrative decision (Edaviel Corp. v. Boykin, 205 Misc. 622; Lichman, Far Haven Apts. v. Davis, Civ. Ct., Queens County, L & T No. 23618/69; Freundenberg v. Cruz, Civ. Ct., New York County, L & T No. 79547/70). However, whatever may have been my reasoning prior to the enactment of the Housing Court Act, I am now of the opinion that it was the intent of Legislature to end the fragmentation of jurisdiction which previously impeded the swift and final disposition of all matters affecting housing within the City of New York.
In its statement of policy, set forth in connection with the act creating the Housing Part, the Legislature stated, in section 1 of chapter 982 of the Laws of 1972 (eff. Oct. 1,1973):
“ (a) The legislature finds that the effective enforcement of state and local laws for the establishment and maintenance of proper housing standards is essential to the health, safety, welfare and reasonable comfort of the citizens of the state. The legislature further finds that such effective enforcement in the City of New York has been hindered by the dispersion of prosecutions, actions and proceedings to compel compliance with housing standards among a number of criminal and civil courts, so that no single court has been able to deal consistently with all of the factual and legal problems presented by the continuing existence of housing violations in any one building e * * The legislature further finds that the establishment of adequate judicial procedures and machinery to the effective enforcement of building standards in the city of New York is a necessity in the public interest.
“(b) The legislature finds that the effective enforcement of proper housing standards in the city of New York will be greatly advanced by the creation of a housing part of the civil court of *968 the city of New York with jurisdiction of sufficient scope (i) to consolidate all actions related to effective building maintenance and operation, (ii) to recommend or employ any and all other remedies, programs, procedures and sanctions authorized by federal, state or local laws for the enforcement of housing -standards, regardless of the relief originally sought by the plaintiff, if it believes that such other or additional remedies, programs, procedures or sanctions will be more effective to accomplish and protect and promote the public interest and compliance ”.
The reluctance of the Department of Social Services to be brought into this proceeding as a respondent is readily understandable and may in fact impose great burdens upon the legal staff of that department, but more important than the burdens imposed is the accomplishment of the mandate of the Legislature to preserve and maintain proper housing standards in the City of New York. Such was the clear and unequivocal legislative direction to this court which is now charged with the' burden of ending the further erosion of low and middle income housing in the City of New York.
Although this is only a proceeding for the nonpayment of rent, it should be understood that the cycle of abandonment of housing in the City of New York usually begins with a simple step — the inability of the landlord to collect rent. The failure of the tenant to pay rent in turn prevents the landlord from paying the bills necessary to repair and maintain the housing in question and the cycle of deterioration begins. It is my belief that the present accelerated rate of abandonment of middle and low-income housing in the City of New York can be traced in large measure to the failure of the rent control laws to keep pace with the rapid rise in the costs of maintenance and operation. I cannot be convinced that valuable properties are voluntarily abandoned if they can be operated profitably.
Bents must be paid and if one of the parties that may be charged with the duty of paying the rent is the Department of Social Services, then the Department of Social Services is a necessary party to the proceeding. If upon the trial of this proceeding the respondent tenant establishes her right to the receipt of public assistance in the HB (home relief) category pending the determination of her application for SSI (supplemental security income) or the right to emergency assistance in the form of rent pursuant to the Social Services Law and the implementing rules and regulations of the Social Services Administration, then the true party in interest is the Department of Social *969 Services (Sessa v. Blakney, 71 Misc 2d 432, supra; Blackman v. Walker, 65 Misc 2d 138, supra). Sufficient facts have been shown to indicate that the respondent has a meritorious claim and , colorable right to emergency assistance (Szanto v. Dumpson, 77 Misc 2d 392). It is therefore in the public interest and in keeping with the spirit and intent of subdivision (d) of section 110 of the New York Civil Court Act to add James R. Dumpson, as Commissioner of the Department of Social Services as a party to this proceeding (Norman Co. v. County of Nassau, 63 Misc 2d 965; Krause v. American Guar. & Liab. Ins. Co., 22 N Y 2d 147).
The claims made by the Department of Social Services that this application must fail because of the failure of the tenant to serve a 30-day notice of claim on the Comptroller of the City of New York pursuant to section 394a-1.0 of the Administrative Code of the City of New York, and the failure of the respondent to exhaust her administrative remedies are both without merit. In Sessa v. Blakney (supra), and in the cases cited therein, it was established that compliance with the statutes is not a prerequisite to a third-party complaint against the city. It has also been established that in any emergency situation, the exhaustion of administrative remedies prior to proceeding in the courts is unnecessary (Matter of Edge v. Sugarman, 66 Misc 2d 713; Matter of Borders v. Nassau County Dept. of Social Servs., 34 A D 2d 805; Matter of Yakkey v. Shuart, 65 Misc 2d 859). The respondent tenant herein faced with eviction for nonpayment of rent, certainly is in an emergency situation.
The application is accordingly granted.