Robert H. Hurlbut, Doing Business as Seneca Nursing

HOME, Respondent, v ROBERT P. WHALEN, as Commissioner of the Department of Health of the State of New York, et al., Appellants.

Fourth Department, July 12, 1977

*Louis J. Lefkowitz, Attorney-General (Clifford A. Royael* and *Ruth Kessler Toch* of counsel), for appellants.

*Harter, Secrest & Emery (William H. Helferich, III,* of counsel), for respondent.

Moule, J. P. Plaintiff is the sole proprietor of the Seneca Nursing Home, located in Waterloo, which opened in October, 1973. It provides nursing home services and health-related facilities to persons eligible to receive financial assistance from the Federal, State and county governments pursuant to title XIX of the Federal Social Security Act (US Code, tit 42, § 1396 *et seq.)* and the New York State Plan for Medical Assistance (Social Services Law, §§ 363-369).

Such nursing homes are reimbursed for services rendered to eligible patients according to rates periodically established by the New York State Department of Health and approved by the Director of the Budget pursuant to section 2807 of the Public Health Law. These rates are designed to be prospective in nature and are directly related to each facility's reasonable operating costs for the annual period starting two years prior to a rate change, adjusted by a factor for inflation. Where a facility has not been in operation long enough to have a sufficient cost experience, its reimbursement rates are calculated according to department regulations on an alternate basis by use of, *inter alia,* the usual and customary rates for comparable services in the geographic area (see 10 NYCRR 86.19 [now 86-2.15]).

Due to its recent opening, the 1975 reimbursement rates for the Seneca Nursing Home were established pursuant to 10 NYCRR 86.19. By letter dated November 1, 1974 plaintiff was informed that for the period January 1, 1975 through December 31, 1975 his facility would be reimbursed at a rate of $33.26 per patient per day for nursing home services and at a rate of $24.48 per patient per day for health-related services.

On October 30, 1975 the State Department of Health advised plaintiff that, pending promulgation of a final rate, the

1975 reimbursement rates would continue in effect on an interim basis beginning January 1, 1976. Thereafter, by letter dated June 25, 1976 the department informed plaintiff that since his facility had been in operation at 90% or greater utilization for a period of six months, its original rate was recomputed using the actual cost experience of the facility.[1] Accordingly, the department stated that, effective July 1, 1976, plaintiff's reimbursement rates for the remainder of that year were reduced to $22.19 per patient per day for nursing home services and to $20.97 per patient per day for health-related services. Plaintiff was further informed that these reductions included a retroactivity adjustment designed to recoup alleged overpayments made to his facility from July 1, 1975 through June 30, 1976.[2]

On July 9, 1976 plaintiff filed his objections to the proposed rate changes and requested an administrative hearing as well as postponement of the effective date of those rates pending the outcome of that hearing. However, no response to these requests was ever received. Thereafter, on August 2, 1976 plaintiff commenced an action for declaratory judgment alleging, *inter alia,* that he was not afforded a hearing prior to the effective date of the new rates; that the retroactive adjustments violated the Public Health Law and the department's own regulations; that the department committed certain errors in computing the new rates; and that pursuant to subdivision 4 of section 2807 of the Public Health Law,[3] no rate change can become effective less than 60 days from the date of promulgation.

Based upon these allegations plaintiff sought a judgment (1) declaring the proposed rates for the period July 1, 1976 through December 31, 1976 null and void; (2) declaring that retroactive adjustments may not be made from June 1, 1975[4] through the final date of plaintiff's action and permanently enjoining defendants from decreasing the reimbursement

---

1. Neither the Public Health Law nor the department's own regulations contain a reference to this 90%—6-month rule. However plaintiff does not contest defendants' authority to promulgate or to apply this standard.

2. Of the $11.07 reduction in the nursing home services rate and of the $3.51 reduction in the health-related services rate, $7.35 and $2.45, respectively, were attributable to the retroactivity adjustments.

3. Due to an error in numbering, there are four subdivisions of section 2807 bearing the designation "subdivision 4". Unless otherwise noted, the subdivision referred to herein is the last of those subdivisions. (L 1976, ch 76, § 13.)

4. Apparently this date should be July 1, 1975.

rates for that period; (3) declaring his objections to the rate computations valid; (4) directing defendants to recompute the rates for July 1, 1976 through December 31, 1976; and (5) directing defendants in the interim to continue reimbursing the facility at the 1975 rates.

Simultaneous with the commencement of the declaratory judgment action, plaintiff moved for a preliminary injunction enjoining defendants from decreasing the reimbursement rates during the pendency of the action. Defendants, in turn, cross-moved for a change of venue from Monroe County to Albany County. By an order entered August 18, 1976 the court denied defendants' motion for a change of venue and granted the motion for a preliminary injunction by enjoining defendants from implementing any retroactive adjustments and by directing that defendants reimburse plaintiff during the pendency of the action at a daily rate of not less than $29.54 per patient for nursing home services and not less than $23.42[5] per patient for health-related services.

Additionally, on October 29, 1976 the court issued an order granting plaintiff's motion for partial summary judgment in the declaratory judgment action. That order provided (1) that no reduction in the reimbursement rates could effectively be made prior to September 1, 1976 due to the 60-day limitation period of section 2807 of the Public Health Law; (2) that plaintiff should be reimbursed for July and August, 1976 at the rates in effect prior to July 1, 1976; (3) that the proposed retroactive adjustments for the period July 1, 1976 through December 31, 1976 were invalid; and (4) that defendants were permanently enjoined from retroactively adjusting downward the reimbursement rates in effect prior to July 1, 1976.

Initially, defendants contend that the court erred in denying their motion for a change of venue to Albany County. With respect to that part of the motion addressed to plaintiff's declaratory judgment action, defendants assert that the convenience of material witnesses and the ends of justice would be promoted by a change of venue under CPLR 510 (subd 3). We disagree.

It is well settled that a motion for a change of venue under CPLR 510 (subd 3) is addressed to the sound discretion of the trial court and, absent a clear abuse, the exercise of that

---

5. These figures represent defendants' revised computations without reduction due to the retroactivity adjustments.

discretion should not be disturbed *(Beardsley v Wyoming County Community Hosp.,* 42 AD2d 821; *Bult v Kornspan,* 37 AD2d 672).

The affidavit in support of a motion under this section must contain, *inter alia,* the names, addresses and occupations of the prospective witnesses; a full and fair statement of what the moving party expects to prove by the witnesses; the facts to which the prospective witnesses will testify; and the basis for the moving party's belief that the witnesses will testify as stated *(Bernstein v McKane,* 3 AD2d 764; 7 Carmody-Wait 2d, NY Prac, § 48:40; 2 Weinstein-Korn-Miller, NY Civ Prac, par 510.14). Since here the affidavit submitted in support of defendants' motion failed to fulfill these requirements, the denial of that motion was not an abuse of discretion *(Lewandowski v Ambrosetti,* 32 AD2d 660; *Radatron, Inc. v Z. Z. Auto Tel.,* 30 AD2d 760).

With respect to that part of defendants' motion which sought a change of venue of the application for a preliminary injunction, it is clear that defendants were entitled to this relief under CPLR 6311 (subd 1). However, inasmuch as the preliminary injunction has since been superseded by the grant of partial summary judgment to plaintiff in the declaratory judgment action, any error in the denial of the motion to change the venue of the injunction application is now moot (see *Smith v Illinois Bell Tel. Co.,* 270 US 587; *Stubbart v County of Monroe,* 58 AD2d 25).

Defendants also contend that the court erred in rejecting their affirmative defense in which they alleged that plaintiff had failed to exhaust his administrative remedies. Insofar as plaintiff has challenged the retroactive portion of the new rate schedule, we find that this was not error.

At the time plaintiff filed his objections to the retroactive adjustments, the commissioner's regulations did not afford him an opportunity to demand a full evidentiary hearing (see 10 NYCRR 86.8 [d] [now 86-2.7 (d)]).[6] Plaintiff, nevertheless, requested a hearing on the grounds of due process as well as a suspension of the retroactive adjustments until such time as

---

6. Effective September 30, 1976 a formal hearing is now available on an appeal from a determination of the Rate Review Panel (10 NYCRR 86-2.7 [g]). See, also, *Matter of White Plains Nursing Home v Whalen* (53 AD2d 926, affd 42 NY2d 834), in which the court held that the provider of nursing home services had a property interest in the retention of alleged overpayments which cannot be terminated without affording him due process.

he had exhausted whatever appeals or protests were available to him. No response, however, was received from defendants with respect to these requests.

The requirement of exhaustion of administrative remedies has no application "in situations where the very administrative procedure under attack is the one which the agency says must be exhausted" *(Finnerty v Cowen,* 508 F2d 979, 982-983; *Matter of Ryan v Hofstra Univ.,* 67 Misc 2d 651, 657; Davis, Administrative Law Treatise, § 20.07 [1976 Supp]). Here, plaintiff not only challenged the substance of defendants' revised computations but also the failure to afford him a right to a hearing. Accordingly, exhaustion of whatever administrative remedies were open to him would have been futile since the administrative agency lacked both the power and competence to pass on the constitutionality of its own actions and procedures *(Finnerty v Cowen, supra,* p 982; see, also, *Young Men's Christian Assn. v Rochester Pure Waters Dist.,* 37 NY2d 371, 375).

Additionally, exhaustion would serve no useful purpose since, on the crucial issue of this case, viz., the propriety of retroactive adjustments, defendants have consistently maintained their right to recoup such alleged overpayments. Finally, since defendants' proposed reductions would result in an immediate and serious cash flow deficit threatening the continued survival of plaintiff's facility, the situation was of an "emergency" nature sufficient to justify immediate recourse to the judicial system (Davis, *supra,* § 20.07; see *Rothbaum v Ebel,* 77 Misc 2d 965; *Matter of Mace v Van Lare,* 69 Misc 2d 1073; *Koffler v Sugarman,* 69 Misc 2d 141; see, also, *Columbia System v United States,* 316 US 407). Accordingly, the court's rejection of this affirmative defense was not in error.

We note in passing that plaintiff's motion for partial summary judgment sought only a determination as to the validity of defendants' retroactive adjustments. It did not involve the validity of the prospective component of the new rates. On this issue it appears that there are factual questions relating to plaintiff's operating costs and the formulae to be used in computing prospective reimbursement rates. Since the administrative agency is best suited to resolve these factual questions and since plaintiff has no property right in prospective reimbursement payments *(Matter of Sigety v Ingraham,* 29 NY2d 110), recourse to the courts, prior to exhaustion of

adminstrative remedies, is unwarranted. Accordingly, that part of plaintiff's declaratory judgment action which seeks to challenge the validity of defendants' prospective rates should be dismissed due to plaintiff's failure to exhaust all administrative remedies.

Defendants' third contention is that the court erred in finding that the State may not retroactively adjust rates paid pursuant to 10 NYCRR 86.19 (now 86-2.15). In support of this argument, defendants place reliance upon the State's common-law power to recoup and upon the authority of 10 NYCRR 86.16 (now 86-2.13).

Although in some circumstances the sovereign has inherent authority to recover sums illegally or erroneously paid (see *United States v Wurts,* 303 US 414; *Mount Sinai Hosp. of Greater Miami v Weinberger,* 517 F2d 329, cert den 425 US 935; *Matter of Fahey v Whalen,* 84 Misc 2d 1040, affd 54 AD2d 1097), where payments are authorized as a result of a "mere error of judgment," it appears that no common-law right of recoupment is recognized *(United States v Barlow,* 132 US 271; *Mount Sinai Hosp. of Greater Miami v Weinberger, supra,* p 337). Since here there is no claim that the original reimbursement rates, computed according to charges for comparable services in the same geographic area, were erroneously or illegally promulgated, there is no basis for invoking a common-law right of recoupment.[7]

Defendants' reliance upon 10 NYCRR 86.16 (now 86-2.13) is also misplaced.[8] Acceptance of their argument that the second sentence of that section authorizes retroactive recoupment necessitates the conclusion that the continuation of plaintiff's original rates beyond the 90%—6-month period constituted an

---

7. Nor can defendants find support for their position in our decision in *Matter of Fahey v Whalen* (54 AD2d 1097, *supra).* The issue there was not whether the State had a right to recoupment but rather whether, assuming such right, the recoupment could be effected by a setoff as opposed to commencement of a plenary action.

8. That section provided as follows: "Final rates: No retroactive adjustments will be made in rates certified pursuant to this Part. This shall not preclude rate adjustments to correct errors in the determination of such rates. However, errors resulting from submission of information by a medical facility may be corrected if brought to the attention of the State Commissioner of Health within 60 days of receipt of the commissioner's rate computation sheet. Errors resulting from the rate computation process may be corrected if brought to the attention of the commissioner within four months of receipt of the commissioner's rate computation sheet."

It is interesting to note that, effective September 30, 1976, the first and second sentences of section 86.16 (10 NYCRR 86-2.13) have been deleted.

"error" as that word is used in the regulation. We cannot accept this reasoning.

Former section 86.16 (10 NYCRR 86.16 [now 86-2.13]) begins with a general proscription against the type of retroactive adjustments defendants seek to employ here. However, the regulation does authorize certain exceptions to this general rule. Thus where there is an error in the submission of information by the medical facility or where there is an error in the actual mathematical computation of the rate, corrections through the use of rate adjustments are permissible within certain specified time periods.

An integrated reading of the entire regulation necessitates a conclusion that the above-mentioned situations are the only exceptions to the proscription against retroactive adjustments. Contrary to defendants' proffered analysis, the second sentence of this section does not generally authorize adjustments for any *error* in the determination of such rates. Rather it merely permits such adjustments in the two situations subsequently described in the regulation.

To hold otherwise would emasculate the effect of the general proscription against rate adjustments. The alleged exception for "errors in the determination of such rates" could well be held to include errors of any sort of origin. This, in our opinion, would be clearly inconsistent with the general purpose of the prospective rate system, i.e., to permit providers of nursing home and health-related services to conduct their operations in full reliance upon the rates certified by the commissioner.

Finally, defendants contend that compliance with the 60-day notice provision of subdivision 4 of section 2807 of the Public Health Law was not required prior to a change in plaintiff's rates. In support of this argument they assert that this section only applies to established rate periods and the affected period from July 1, 1976 through December 31, 1976 was not such an established period.

Defendants cite no authority in support of this interpretation of the language of the statute and we see no compelling reason for so limiting its application. It is clear in the instant case that the July 1, 1976 date represented the end of the interim rate period and the beginning of reimbursement under a "final rate" schedule. As such, that period represented an "established rate period" within the meaning of the statute and defendants were, accordingly, required to give

plaintiff 60 days' notice prior to the effective date of the new rates.

Accordingly, the appeal from the order entered August 18, 1976 which granted plaintiff a preliminary injunction should be dismissed as moot and the judgment (denominated order) entered October 29, 1976 should be affirmed. That part of the remainder of plaintiff's action for declaratory judgment which seeks to challenge the prospective component of the proposed rates should be dismissed because of plaintiff's failure to exhaust his administrative remedies.

CARDAMONE, HANCOCK, DENMAN and WITMER, JJ., concur.

Appeal from order entered August 18, 1976 unanimously dismissed as moot.

Judgment unanimously affirmed, with costs.