■ In the Matter of SISTERS OF CHARITY HOSPITAL OF BUFFALO, Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants. — Judgment affirmed, with costs. Memorandum: In this CPLR article 78 proceeding petitioner, which is a skilled nursing facility, seeks judgment declaring that its per diem reimbursement rates for Medicaid patients were properly established and paid at the rate of $62.17 for 1978 and $66.19 for 1979. The petition also seeks an order enjoining respondents from recouping sums claimed to have been overpaid to petitioner. The judgment appealed from granted the petition, and essentially for reasons stated in the decision at Special Term (Doyle, J.), we affirm. We add only the following: The rates of $62.17 and $66.19 were established by respondent Axelrod after management assessment reviews (see 10 NYCRR 86-2.14 [a] [7], eff Sept. 30, 1977) which petitioner requested, respectively, in late 1977 for the year 1978, and in 1978 for the year 1979. Based on petitioner's actual per diem patient costs of $60.10 for 1978 and $64.01 for 1979, respondent Axelrod notified petitioner in February, 1981 that the reimbursement rates for those years were retroactively reduced to coincide with petitioner's actual costs and thereafter, through respondent Buscaglia, advised petitioner that recoupment of approximately $107,000 would be sought. Petitioner objected to the retroactive readjustments and recoupment and claimed that only 55% of the facility's operating costs was considered in the management assessment reviews and that the lower actual operating costs resulted from economies in areas not considered in these reviews. Its request for a hearing was denied. In justification of his action, respondent Axelrod asserts that it is his "policy" to retrospectively establish rates based upon actual costs, and to seek recoupment in every case where actual costs are less than those previously established upon management assessment review. Respondent, however, has not promulgated a regulation setting forth such policy, and he offers no basis in this record to support a finding that petitioner had notice that there was such a policy. Indeed, to the contrary, he admits in his answer that the 1978 and 1979 rates were "final." Furthermore, there is no claim here that the rates were erroneous or illegal. Under these circumstances, the action of respondent Axelrod, which was declared almost 14 months after expiration of the subject years, must be viewed as arbitrary and capricious (CPLR 7803, subd 3; cf. *Matter of Severino v Ingraham*, 44 NY2d 763; see *Hurlbut v Whalen*, 58 AD2d 311, mot for lv to app den 43 NY2d 643). We conclude that in the circumstances presented there is no valid reason for respondent Axelrod to deviate from his well-established policy of allowing health providers to keep the difference in savings between its final prospective rates and actual operating costs. Finally, respondents have failed

to show that recoupment of payments made in excess of actual costs for the years 1978 and 1979 will have any effect upon rates for subsequent years. Under the statutory and regulatory scheme, rates for subsequent years will still be dependent in part upon actual costs incurred by petitioner in the years 1978 and 1979. We need not reach the issue whether the Commissioner of Health has the authority to promulgate a regulation in order to retroactively readjust rates and recoup the excess over the actual cost of operating a skilled nursing facility. All concur, except Hancock, Jr., J., who dissents and votes to reverse and dismiss the petition, in the following memorandum.

Hancock, Jr., J. (dissenting). I dissent. Respondent Commissioner of Health appeals from a judgment in this CPLR article 78 proceeding annulling his determination reducing the Medicaid reimbursement rates allowed to petitioner residential health care facility for the years 1978 and 1979 and enjoining the Erie County Department of Social Services from recouping amounts allegedly overpaid in those years. There is nothing in the statutes, regulations, or case law prohibiting either readjustment of these rates or, after readjustment, recoupment of the overpayments (see, e.g., Hurlbut v Whalen, 58 AD2d 311, in which current payments were reduced to recoup past overpayments). The dispute focuses on whether the commissioner's determination that the facility, whose 1978 and 1979 rates had been set pursuant to management assessment review (MAR), but whose actual costs proved to be less than those rates, must "repay" the difference, was arbitrary and capricious. For reasons which follow, I conclude that it was not. Under the regulatory scheme in effect at the times in question a residential health care facility's basic rate for a certain year (the "rate year") is derived from that facility's allowable actual costs per "patient day" two years previously (the "base year") (10 NYCRR 86-2.10), adjusted by a "trend factor" (to account for inflation) and limited by cost ceilings based on average costs per patient day experienced by other facilities of similar size and function (10 NYCRR 86-2.11). The rate is generally certified before the rate year begins. If a facility succeeds in keeping its costs below this rate during the rate year, it may retain the difference. Once advised of its certified rate, a facility believing its actual costs will be higher than that rate may request a MAR which may result in a waiver of the costs ceilings, permitting a significantly higher reimbursement rate. Such a review "shall consider the quality, type and intensity of care required by the patient population present at the residential health care facility at the time of the management assessment review, and the efficiency with which the care is delivered" (10 NYCRR 86-2.14 [a] [7], eff Sept. 30, 1977). Here, after notification in late 1977 of its certified rate of $50.15 per patient day for 1978 petitioner requested a MAR. Later petitioner also requested review concerning its 1979 certified rate of $53.60. On October 26, 1978 petitioner advised the commissioner that its "best estimate of our actual * * * per diem [cost] for 1978 is $62.00" and stated: "Still unknown are adjustments in the allocation of hospital overhead costs for the third and fourth quarters * * * and of course any year-end audit adjustments." On May 4, 1979 the commissioner advised petitioner that its 1978 rate was revised pursuant to MAR to $61.95, and stated that "[t]he rate has been limited however to the facility's most current estimate of its 1978 per diem cost (please refer to letter of 10/26/78 * * *)." The 1979 rate was based on the 1978 rate (as revised after MAR) and adjusted by a trend factor. Due to an adjustment in the trend factor the rates were later revised on March 25, 1980 to $62.17 for 1978 and $66.19 for 1979. On February 26, 1981 the commissioner notified petitioner that its 1978 rate was revised downward to $60.10 and its 1979 rate to $64.01. The accompanying "Bureau Recommendation and Justification" stated: "A comparison of the provider's actual nursing home cost per diem incurred during the respective 1978-1979

rate years has been performed to insure that the corresponding Management Assessment per diems are not in excess of the actual cost per diems. In this instance, the corresponding 1978 Management Assessment per diem exceeds the 1978 actual cost per diem. Therefore, the provider's 1978 * * * rate has been revised to reflect 1978 actual cost data. In addition the provider's 1979 * * * rate has been revised to reflect 1978 actual operating costs trended by one year". Later the rates were again altered slightly due to an adjusted trend factor to $60.32 for 1978 and $64.35 for 1979. On petitioner's administrative appeal the commissioner declined to grant a hearing or to alter the rates on the ground that "management assessments are calculated in order to pay the lower of the actual cost per diem * * * in the rate year or the management assessment cost per diem." On review, Special Term, noting the general rule that a facility's certified rate may not later be revised based on the facility's actual costs, held that the commissioner lacked authority to except from that rule a facility whose rate was revised after MAR and that he had not demonstrated a rational basis for doing so. Our court affirms. I disagree. Preliminarily, I note that the record shows that the commissioner has construed the regulation permitting revision of a rate after MAR to reflect a facility's actual costs in the rate year. This is consistent with the regulation itself which states that the MAR shall review factors "present at the residential health care facility *at the time of the management assessment review*" (10 NYCRR 86-2.14 [a] [7], eff Sept. 30, 1977; emphasis added). In an affidavit the director of the Bureau of Hospital Reimbursement, Office of Health Systems Management stated that "as a matter of long-standing department policy the reimbursement rate for a [residential health care facility] that has undergone a MAR is held to the lower of the MAR rate or the facility's actual per diem costs for the rate year in question." This assertion is supported by the May 4, 1979 notification to petitioner of its 1978 rate as adjusted after MAR stating that the rate "has been limited however to the facility's most current estimate of its 1978 per diem cost" and setting the 1978 rate within five cents of petitioner's actual 1978 costs as estimated on October 26, 1978. Similarly, the notification of downward revision in the February 26, 1981 letter stated that the revision was "to insure that the corresponding management assessment per diems are not in excess of the actual cost per diems." In a letter adopting the commissioner's construction of the regulations the division of health care financing dismissed the administrative appeal. As stated, there is no statute, regulation or case law prohibiting the commissioner from limiting a rate adjusted after MAR to a facility's costs in the rate year. The cases cited by petitioner (see, e.g., *Matter of Jewish Mem. Hosp. v Whalen,* 47 NY2d 331; *Hurlbut v Whalen,* 58 AD2d 311, *supra*) are inapposite; they concern enactments which have been abrogated (see *Hurlbut v Whalen, supra,* p 318, n 8, noting deletion on Sept. 30, 1976 of prohibition of retroactive adjustments previously found in 10 NYCRR 86.16) or which do not apply (residential health care facilities are governed by 10 NYCRR subpart 86-2, enacted pursuant to Public Health Law, § 2808; *Matter of Jewish Mem. Hosp. v Whalen, supra,* concerns 10 NYCRR subpart 86-1 and Public Health Law, § 2807). Moreover, they concern rates established by the usual method — not by MAR, an alternative rate-setting scheme which is different in purpose and in method of calculation. Nor are there policy considerations or reasons of fairness which should impel us to hold that the hospital must be permitted to keep the difference between the MAR rate and its actual costs. It is evident that when the rate is based on estimated actual cost the rationale for prohibiting subsequent revision of a rate in view of actual cost figures does not apply. Where a facility's rate is based on its past performance and that of similar facilities (the usual method) it is appropriate to reward it for improving its

performance and for doing better than other facilities. In contrast, where, as here, the rate is based on a facility's own estimate of its actual current costs, there is no purpose served in rewarding it if it develops that those costs have been overestimated. Petitioner, as a result of the commissioner's final revised rates, received exactly what it sought in electing to proceed by MAR: substantially increased rates (increased $10.17 per patient day in 1978 and $10.75 in 1979) due to being freed from the cost limitations inherent in the usual method and being given a rate based on what was assumed to be an accurate estimate of actual costs. It cannot be considered unfair if the rate is subsequently altered to eliminate the disparity between a rate based on estimated cost and one based on true cost. Petitioner has advanced no plausible reason why it should continue to be paid on the basis of estimates known to be inaccurate. The same reasoning leads me to conclude that both the commissioner's interpretation of the regulations and his actions in revising petitioner's MAR rates had a rational basis and were entirely reasonable (see, generally, *Matter of Pell v Board of Educ.*, 34 NY2d 222). I see no merit in the argument that because the difference between the MAR rate and the final actual cost figures arose from lower-than-estimated actual costs in areas not directly addressed by the MAR, it should be permitted to retain the difference. The fact remains that near the end of the rate year 1978, petitioner provided cost estimates pertaining to all of the areas on which the rate was based (including allocated hospital overhead costs); and whatever cost reductions it was able to make in one area or additional expenditures required in another would have been considered in reaching that estimate. Whatever the reason for the overestimation of certain costs, it is reasonable that petitioner not be permitted to keep the difference between the erroneously high estimated costs and the actual costs. I note also that inasmuch as petitioner's initial MAR rates were expressly based on petitioner's own estimate of its actual costs made at a time when, as petitioner admitted in its October 26, 1978 letter, certain costs and adjustments were still unknown, it is difficult to see how petitioner could be surprised or prejudiced when those rates were later altered, after all costs and adjustments were known, to reflect final actual cost figures experienced by petitioner. The majority, it must be noted, has adopted the argument presented in a footnote in respondent's brief that the commissioner has purportedly "admitted" in his answer the finality of $62.17 for the rate in 1978 and $66.19 for 1979. The words characterizing these rates as "final" are the petitioner's — not the commissioner's — and the admission is found only in the commissioner's pleading which generally admits 22 paragraphs of the petition including paragraphs 12 and 23. In view of the fact that apparently Special Term in its decision did not treat this pleading error as significant, I believe it is wrong to give it decisive effect on appeal. (Appeal from judgment of Supreme Court, Erie County, Doyle, J. — art 78.) Present — Dillon, P. J., Hancock, Jr., Green, O'Donnell and Schnepp, JJ.