OPINION OF THE COURT
Andrew V. Siracuse, J.
Petitioner, a not-for-profit corporation, operates the Anthony L. Jordan Health Center, a licensed nonresidential diagnostics and treatment center located in Rochester, New York. It provides health care services to persons eligible to receive medical assistance under title XIX of the Social Security Act (42 USC § 301 et seq.) and New York State Plan for Medical Assistance (Social Services Law §§ 363-369), collectively known as Medicaid. Petitioner is compensated for medical services rendered to Medicaid patients at a rate which is periodically established by the New York State Department of Health (hereinafter the Department) and approved by the Director of the Budget pursuant to section 2807 of the Public Health Law and subpart 86-1 of the Commissioner’s Administrative Rules and Regulations (10 NYCRR 86-1.1 et seq.).
In issue is the Department’s calculation or, more specifically, recalculation of petitioner’s Medicaid reimbursement rate for two periods: April 1, 1983 through March 31, 1984 (hereinafter the 1983/1984 period) and April 1, 1984 through March 31, 1985 (hereinafter the 1984/1985 period). On December 1, 1983, Jordan received from the Department the rate notification for the 1983/1984 period. Jordan timely appealed the Department’s determination on several grounds. In its initial administrative decision issued April 23, 1986, the Department’s Bureau of Ambulatory Care Reimbursement (hereinafter the Bureau) allowed certain of the items raised in Jordan’s appeal and recalculated the rate from $51.69 to $56.43 effective beginning April 1, 1983. On May 22, 1986, Jordan submitted a formal request for a hearing from the Bureau’s April 23, 1986 decision. The hearing request did not challenge the determination of the rate revision and thereby acknowledged that Jordan accepted the $56.43 revised rate. Jordan actually received retroactive reimbursement for the full rate period of April 1, 1983-March 31,1984.
The only items which were challenged in the hearing request were: (1) the grouping methodology, specifically Jordan’s grouping with the upstate urban multiservice category; (2) the inclusion of 1980 cost data for facilities who did not file 1981 cost reports in the calculation of group ceilings; (3) calculation *1046 of an administrative cost center ceiling for Jordan but not for other cost centers; (4) applicability date of new rate; and (5) disallowance of outreach workers and patient relations supervisor costs. The grouping issue was determined to be one of law, having been the subject of previous appeals, and was resolved by stipulation of the parties. The second, third, and fourth issues were also resolved or determined not to be proper subjects for a hearing prior to the hearing. Thus, the only issue left for the hearing on the 1983/1984 appeal was the exclusion of the outreach workers and patient relations supervisor costs from the rate calculation.
With regard to the 1984/1985 reimbursement rate, the Department notified Jordan on September 10, 1984 that the rate for that year would be $59.64. Jordan timely appealed the determination, objecting to the disallowance of expenses for the patient relations supervisor, outreach workers, and referred laboratory work. The Bureau totally rejected Jordan’s appeal on these grounds on December 2, 1985. A timely request for a hearing on these issues was submitted by Jordan on December 20, 1985. Significantly, the group composition was not an issue of the appeal.
The two appeals were joined and a hearing was commenced. The hearing was adjourned shortly after it commenced to allow the parties to pursue settlement negotiations. The parties thereafter entered into a stipulation which was fully executed on March 19, 1987. The stipulation, which was drafted by the Department, provided that the Department was to advise Jordan of the new rate figures calculated in accordance with the stipulation within 30 days. Some six months later, on November 17, 1987, the Department advised Jordan that the rate had been recalculated to reduce the 1983/1984 rate from $56.43 to $54.75 and the 1984/1985 rate from $59.64 to $51.17. This notice came four years after the initial rate calculation in the case of the 1983/1984 period and 38 months after the initial calculation in the case of the 1984/1985 period. Had all other factors used in calculating the rate remained the same, the inclusion of the previously disallowed expenses would have resulted in an increase in the rate upon recalculation. In performing the recalculation, however, the Bureau unilaterally changed the group composition. This resulted in a negative adjustment of approximately $466,500 which the Department is recouping.
Before addressing the substantive issues, the Department’s allegation that petitioner has failed to exhaust admin *1047 istrative remedies must be examined. Administrative remedies are to be pursued to resolve factual issues and only if there is some utility in so doing. (10 NYCRR 86-1.17 [c]; Hurlbut v Whalen, 58 AD2d 311 [4th Dept 1977].) After receiving the Department’s recalculation in November 1987, counsel for the petitioner wrote to the Administrative Law Judge who had handled this matter to request his assistance. The Administrative Law Judge replied that the appeals were moot once the stipulation had been entered. It is clear that there are no issues of fact herein which would be appropriate for resolution in an administrative proceeding. Since the issue presented is one of law, that being the application of the stipulation to the rate recalculation, petitioner appropriately commenced this CPLR article 78 proceeding and was not required to exhaust administrative remedies as a prerequisite to this proceeding.
It is quite clear from the record that the negotiations and Jordan’s entry into the stipulation were based upon the premises that the base data was to remain unchanged and that the only adjustments to be made to the rate calculation was the inclusion of the previously disallowed expenses in the group ceiling calculation. Significantly, paragraph 4 of the stipulation states that the group ceiling was to be recomputed in accordance with two previous appeals and the stipulation. The stipulation makes no mention of regrouping or changing any of the other factors in the rate calculation.
It is the Department’s position that the initial grouping was in error and that they are entitled to correct errors when discovered. (See, Matter of Westledge Nursing Home v Axelrod, 68 NY2d 862 [1986]; Matter of Daleview Nursing Home v Axelrod, 91 AD2d 1161 [3d Dept 1983], affd 62 NY2d 30 [1984]; Matter of University of Rochester Strong Mem. Hosp. v Whalen, 61 AD2d 867 [3d Dept 1978].) There are two circumstances in which Medicaid reimbursement rates may be retroactively reduced: (1) after an audit (10 NYCRR 86-1.8) or (2) after discovery of an error in the mathematical calculation (10 NYCRR 86-2.13).
The stipulation did provide that the rates to be revised were subject to audit pursuant to applicable statutes and regulations. A reading of 10 NYCRR 86-1.8 indicates that the purpose of an audit is to verify the records maintained by the medical facility which form the basis for the fiscal and statistical reports. In other words, an audit is intended to check the veracity and accuracy of the records which the medical fácil-, ity supplies to the Department and which the Department *1048 uses as the basis for its calculation of the rate. Clearly, group composition is not an item which is the subject of an audit. Therefore, the Department cannot legitimately claim that the regrouping was done pursuant to its right to conduct an audit.
The only other justification for the regrouping would be to correct an error. The case law recognizes two types of errors: "error[s] of judgment” and "error[s] in calculation”. (Matter of Daleview Nursing Home v Axelrod, supra, at 33; Hurlbut v Whalen, supra, at 318.) There is a common-law right of recoupment for errors in calculation; however, this right does not exist in the case of errors of judgment. (Hurlbut v Whalen, supra, at 318.) In Hurlbut, the court defined the types of errors which are subject to retroactive adjustment pursuant to the regulation at 10 NYCRR 86-2.13:
"where there is an error in the submission of information by the medical facility or where there is an error in the actual mathematical computation of the rate, corrections through the use of rate adjustments are permissible within certain specified time periods.
"An integrated reading of the entire regulation necessitates a conclusion that the above-mentioned situations are the only exceptions to the proscription against retroactive adjustments. Contrary to defendants’ proffered analysis, the second sentence of this section does not generally authorize adjustments for any error in the determination of such rates. Rather it merely permits such adjustments in the two situations subsequently described in the regulation.
"To hold otherwise would emasculate the effect of the general proscription against rate adjustments. The alleged exception for 'errors in the determination of such rates’ could well be held to include errors of any sort of origin. This, in our opinion, would be clearly inconsistent with the general purpose of the prospective rate system, i.e., to permit providers of nursing home and health-related services to conduct their operations in full reliance upon the rates certified by the commissioner.” (Supra, at 319.)
Determination of the composition of the group is not a computational function. It is a discretionary function which requires the exercise of judgment. As such, the Department does not have an absolute right to recoupment. For the Department’s position that this is a mere correction of an error in calculation to be plausible and consistent, it would seem that the rates of all the facilities in the redesignated *1049 group should be adjusted. There is no indication that the other facilities have undergone rate recalculations due to this factor.
Further, to allow the interjection of this new factor after the parties entered a stipulation would do violence to the settlement process. The Department argues that because no mention was made of the group composition in the stipulation, it was free to adjust the group composition in performing the recalculation. It is clear from the appeal process pursued by the plaintiff that only those issues raised by it were deemed to be in controversy. All other issues or items in the calculation process were deemed to be undisputed and established. The group composition was one such item. If one accepts the Department’s position, the result would be that a stipulation, in order to be binding, would have to address every possible issue as well as those issues actually in dispute. This would create an absurd and untenable result.
The petition is granted.