In the Matter of MOUNT LORETTO NURSING HOME, INC., Formerly Known as MOUNT LORETTO CONVALESCENT AND REST HOME, Respondent, v CESAR PERALES, as Commissioner of Social Services of the State of New York, et al., Appellants.

Third Department, June 20, 1991

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Clifford A. Royael* and *Peter G. Crary* of counsel), for appellants.

*O'Connell & Aronowitz (Cornelius D. Murray* of counsel), for respondent.

### OPINION OF THE COURT

CREW III, J.

Petitioner is a not-for-profit residential health-care facility located in Montgomery County and is a participant in the Medicaid program. The Department of Health (hereinafter DOH) is responsible for determining the methodology to be used in setting Medicaid reimbursement rates for such a facility (Public Health Law § 2807). The rate of reimbursement for a given year is determined by ascertaining a facility's allowable costs for a particular year (the base year), dividing the total of those allowable costs by the number of patient days of care provided during the base year, and then multiplying the resulting cost per patient day by a "trend factor" to allow for inflation between the base year and the year for which the rate is being calculated (the rate year) (10 NYCRR subpart 86-2).

An alternate rate-setting methodology known as management assessment review (hereinafter MAR) is also used (10

NYCRR 86-2.14 [a] [former (7)]). Where a facility anticipates that its actual costs will be higher than a rate established on a cost-related basis, it may request a MAR which may result in a significantly higher reimbursement rate. The MAR methodology differs significantly from the cost-related basis in that it focuses on staffing needs and the costs associated therewith. It is arrived at by a somewhat complicated formula which is applied to data supplied by the facility for the base year and for the year for which the MAR is requested. This data includes staffing positions, reported salaries for those positions, computation of full-time equivalents for said positions and the like. DOH accepts the data provided by the facility, applies the formula and arrives at what is determined to be a current figure. DOH then applies the same data to the formula, with the exception that it substitutes in the equation a "proposed" full-time equivalent figure which it arrives at through its own expertise based upon the experience of other comparable facilities throughout the State, and thereby arrives at a proposed figure. DOH then adopts whichever is the lesser of those two figures. Having applied this formula to the different groups of employees that the MAR identifies and having selected the lesser figure arrived at with regard to each group, the figures are totaled and then applied to other formulae which results in the facility's allowable per diem rate.

Petitioner submitted its cost report for 1975 for use by DOH in computing its reimbursement rate for the year 1977. In October 1977, petitioner requested a MAR to adjust its 1975 base rate. Based upon the MAR, DOH issued petitioner a revised higher reimbursement rate for 1977. Petitioner's reimbursement rates for 1978 and 1979 were based on the 1977 MAR adjusted by a "trend factor" to account for inflation. For the rate years 1980 and 1981 DOH, relying on 10 NYCRR former 86-2.10, which provided that rates for those years be based on the lower of the 1979 MAR rate trended for inflation or the 1978 actual costs basis trended for inflation, used petitioner's 1979 rate to reimburse petitioner because this was lower than the rate based upon petitioner's 1978 actual costs.

The reimbursement rate established as the result of the 1977 MAR was provisional since it was based upon unaudited figures supplied to DOH by petitioner (see, 10 NYCRR 86-2.7; *Matter of Westledge Nursing Home v Axelrod*, 68 NY2d 862, 864-865). In April 1986 the Department of Social Services (hereinafter DSS) completed an audit of the 1977 MAR which

revealed significant discrepancies in the data submitted to DOH by petitioner and used in the MAR formula. DSS then applied the audited data to the MAR formula, which resulted in a lower per diem reimbursement rate. Consequently, DSS determined that petitioner had been overpaid in the amount of $369,359 and sought recoupment thereof. Petitioner requested an administrative hearing to challenge the adjustments on the ground that DSS could not retroactively revise its rates. Following that hearing, respondent Commissioner of DSS issued a decision determining that petitioner's rates were properly revised. Petitioner then commenced this CPLR article 78 proceeding seeking annulment and Supreme Court granted the petition on the ground that respondents had engaged in retroactive rate making. Respondents appeal.

On this appeal we are confronted with two issues. First, we must determine whether respondents acted illegally in revising petitioner's rates. If they did not, we must determine whether they are nevertheless prevented from using the revised rate to effect a downward adjustment of petitioner's 1980 and 1981 reimbursement rates. Respondents contend that petitioner provided DOH with inaccurate and erroneous data which was not discovered until completion of the 1986 audit. They further contend that the Commissioner of DSS has the right to adjust petitioner's rate by applying the correct data to the MAR formula. We agree. It has been held that where a facility's reimbursement rates were based upon false information, DSS may retroactively adjust the rates and recoup overpayments (see, Matter of Westledge Nursing Home v Axelrod, supra).

Petitioner contends, and Supreme Court agreed, that this case is governed by Matter of Sisters of Charity Hosp. v Axelrod (98 AD2d 979). In that case DOH established reimbursement rates for the years 1978 and 1979 following the MAR methodology. Based upon the facility's actual per diem patient costs for those years, respondent Commissioner of Health sought to retroactively reduce the rates to coincide with the actual costs and recover the difference. There was no claim that the rates established by reason of the MAR were erroneous. The Fourth Department affirmed the judgment in favor of the facility, noting that there was no reason for the Commissioner of Health to deviate from the well-established policy of allowing health providers to retain the difference in savings between their final prospective rates and actual operating costs. However, in this case respondents claim that,

unlike *Sisters of Charity,* the reimbursement rate established was based upon erroneous information supplied to DOH. We agree. Respondents in this case do not seek reimbursement based upon petitioner's actual operating costs in the rate years as compared to the reimbursement rate established by reason of the MAR. All respondents seek to do is to take the correct figures for the base year and apply them to the MAR formulae, thereby arriving at a reimbursement rate which would have been arrived at in 1977 had petitioner supplied the proper information. To hold otherwise would permit petitioner to retain public moneys that it should not have received in the first place *(see, Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169, 179, *cert denied* 476 US 1115).

■ Next petitioner claims that DSS improperly applied the revised 1977 MAR reimbursement rate to effect a downward adjustment of petitioner's 1980 and 1981 reimbursement rates. The regulations then in effect provided that the 1980 Medicaid reimbursement rate was to be computed on the lower of 1978 actual costs trended by the 1980 trend factor or a 1979 MAR so trended, and the 1981 rate should be the 1980 rate trended by the 1981 trend factor (10 NYCRR former 86-2.10). Petitioner argues that the 1979 reimbursement rate should not have been utilized in establishing its 1980 and 1981 rates because no MAR was conducted for that year. We agree. In a case strikingly similar to the case at bar, we held that DOH's determination that a 1979 rate was based upon a MAR which was conducted in 1978 was an unreasonable interpretation of the regulations *(see, Matter of Neverett v New York State Dept. of Health,* 89 AD2d 719).

MAHONEY, P. J., LEVINE, MERCURE and HARVEY, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as annulled the modification by respondent Commissioner of Social Services of petitioner's reimbursement rates for the years 1977 through 1979; modification of reimbursement rates for said years confirmed and matter remitted to respondents for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.