Harry T. Nusbaum, J.
This action was instituted by the plaintiff, Mount Sinai Hospital, to collect charges for the treatment and hospitalization of the defendant and third-party plaintiff, Ronald Brinn. Mr. Brinn in turn has impleaded the Commissioner of the Department of Social Services by the service of a verified third-party complaint which alleges that the third-party *2 plaintiff was eligible for medical assistance under the provisions of title 11 of article 5 of the Social Services Law as a “ medically indigent ” person and the claim, if valid, is due and payable from the Department of Social Services.
The case presents a classic example of the web of laws, rules, regulations and public assistance directives and requirements that have been enacted to preserve and protect the moneys set aside to aid the needy which, by their volume and complexity, frustrate the very purpose for which the public assistance laws were enacted by our Congress and State Legislature. It has for some time been a matter of public concern and scandal that persons intent upon defrauding the city, State and Federal Governments out of these precious funds have little trouble in so doing, while many of our improverished, needy and deserving are often faced with an impenetrable wall of red tape which would appall and frighten any honest applicant for Medieaid relief.
As an example of the foregoing, I set forth some of the statutory citations submitted by the attorneys for the Department of Social Services to buttress its denial of liability for the claim asserted. Beginning with title XIX of the Social Security Act of 1965, effective as of January 1, 1966, the fountainhead of the program to provide medical assistance for the indigent, we have, the implementing statutes contained in the several volumes of the Public Welfare Law (U. S. Code, tit. 42), the Federal Handbook of Public Assistance, the Social Services Law of the State of New York, the Rules of the State Board of Social Welfare, and the Regulations of the State Department of Social Services. These, coupled with strict bureaucratic interpretations of the applicable statutes, rules and regulations and the forms required to be submitted for qualification and eligibility, constitute a challenge which the most literate of lay persons would fail to meet. Needless to say, welfare recipients who automatically qualify for medical assistance and dishonest applicants whose answers to the questionnaire bear little relationship to the truth have no such problem.
The defendant and third-party plaintiff Ronald Brinn was a college student, attending the City University when, on June 2, 1970, he entered Mount Sinai Hospital for surgery. He was discharged from the hospital on June 17, 1970. The hospital bill for services rendered for this short stay was $2,578.95. At that time his only source of income was $20 a week which he received from the seek program. Out of this sum he paid $15 a week for both room and board to an aunt with whom he resided. *3 On July 21, 1970, he filed an application for medical assistance, which was rejected on the grounds of incomplete information provided by the applicant. He thereupon filed another application which, on November 30,1970, was also rejected for the same reason. Yet another application was filed and finally, on June 8, 1971, Mr. Brinn received a notification from the Bureau of Medical Assistance of the Department of Social Services which certified that he had been “ found eligible for Medicaid ” and was entitled to “ all available benefits”. He notified Mount ■ Sinai Hospital of his eligibility, but the hospital never billed the Department of Social Services for the charges incurred by Mr. Brinn.
Resistance to the payment of the bill by the Department of Social Services is now based upon the following:
(a) More than 12 months have elapsed since the services were rendered (Rules of the New York State Board of Social Welfare, § 105, subd. [d]).
(b) The failure of the vendor, Mount Sinai Hospital, to bill the Department of Social Services (Federal Handbook of Public Assistance, § 5810; Social Services Law, § 367-a).
The refusal of the Department of Social Services to pay the claim appears also to be based upon the fact that the letter of eligibility, which was mailed to Mr. Brinn, indicated that the effective date of Mr. Brian’s eligibility was July 1, 1970. In view of the fact that the services which were rendered to Mr. Brinn were rendered between June 2, 1970, and June 17, 1970, and the application was specifically for the payment of hospitalization services which the Department of Social Services knew had taken place just prior to the eligibility date set forth on the certificate, the issuance of the certificate did not solve the problem. The only explanation for setting this effective date appears to be that from the application filed by Mr. Brinn the board determined that he was only eligible after July 1, 1970 because prior to that time, by an error in calculation or perhaps a mistake made by the applicant in filling out the application, it appeared that he was earning $1,820 per annum, which sum (prior to June 30, 1970) would make him ineligible to receive Medicaid assistance. The law with respect to eligibility was changed on July 1, 1970 and, as a result of such change, persons earning up to $1,910 per annum were eligible for Medicaid.
The alleged error which led to this mix-up arose out of Mr. Brian’s listing of the $15 a week which he paid to his aunt in the wrong place on the application form, and the person processing the application assumed that Mr. Brinn’s income con *4 sisted of the $20 a week which he earned from the seek program plus the additional $15 a week he paid to his aunt. This, however, was not the fact and the plaintiff has stated under oath, and I credit his statement, that at the time he made the application for Medicaid, his total income was $20 a week or $1,040 per annum. It is interesting to note that a witness from the Department of Social Services, Bureau of Medical Assistance, testified that if the application had been properly filled out so as to indicate that Mr. Brinn in fact only received $1,040 annually, he would, without any question, have been entitled to Medicaid for the period in question.
At this point, therefore, my view of the problem is that although the defendant and third-party plaintiff was admittedly qualified and eligible for Medicaid by reason of his income, he nevertheless was refused such Medicaid because of his inability to understand or properly fill out the complicated forms required. This, coupled with the failure of the Department of Social Services to heed the mandate contained in section 363 of the Social Services Law ‘ ‘ to facilitate the application for, and the provision of such medical assistance ’ ’ and the failure of the Mount Sinai Hospital to bill the Department of Social Services for the charges incurred by Mr. Brinn, even though notified of his eligibility for Medicaid, now are put forth as reasons for not paying for the medical services rendered to him. Once again, therefore, form has taken precedence over substance and the defendant and third-party plaintiff herein is being deprived of a right which was granted to him by the Congress of the United States and our State Legislature.
In 1966, the State Legislature enacted into law “ Title 11 — Medical Assistance For Needy Persons ”, as part of the Social Welfare Law (now known as the Social Services Law). In-section 363 thereof the Legislature declared that the object and purpose of the legislation was as follows: ‘ ‘ Medical assistance for needy persons is hereby declared to be a matter of public concern and a necessity in promoting the public health and welfare and for promoting the state’s goal of making available to everyone, regardless of * * * economic standing, uniform, high quality medical care. ’ ’
In the Matter of St. Clare’s Hosp. v. Breslin (19 A D 2d 922, 923), the court, in discussing the meaning and import of section 187 (now covered by material contained in sections 365-a and 367 of the Social Services Law), stated, “ Thus the legislative purport in section 187, it would seem, is both to insure treatment for those who cannot provide such treatment for themselves and, at *5 the same time, assure payment to the hospital of its bill by the welfare district if the patient is indigent. ’ ’
It must also be noted that Mr. Brinn, whose application for Medicaid was processed only under the provisions of section 366 (subd. 1, par. [a]) may well have qualified for assistance under the provisions of section 366 (subd. 2, par. [c]) of the Social Services Law called the “ catastrophic illness ” clause. In light of this and the many clerical snafus which took place in this matter with the accompanying and inevitable time lapses, the present posture of the Department of Social Services that they are now prohibited from making payment because more than 12 months have elapsed since the services were rendered, is .somewhat unreal.
A close reading of subdivision (c) of section 105.1 of the Rules of the Board of Social Welfare (18 NYCRR 105.1 [c]), the section relied upon for that position, reveals that the rule was promulgated for the purpose of assuring prompt payment for services rendered to recipients of public assistance and not as a means or reason for denying payment. In addition, subdivision (d) of section 105.2 specifically provides, “ In cases where payment of an item has been deferred pending final determination of a legal or administrative proceeding involving the liability of the public welfare district therefor, payment shall be made by the end of the third month following the month of such final determination.” (See, also, Society of N. Y. Hosp. v. Mogensen, 65 Misc 2d 515.) As no final legal determination of the department’s liability has yet been made, payment may, therefore, be made within three months after such determination. I also find that the failure of the hospital to submit a bill, although unwise, is understandable in view of the limitation of eligibility (July 1, 1970) contained in the notification of eligibility dated June 8, 1971.
Among the other issues raised in this proceeding is a latent challenge to this court’s jurisdiction to correct even an admitted administrative error. Can any injustice, when discovered, ever be countenanced? The primary obligor for the payment of this bill is and was the Department of Social Services. This point was made by my learned colleague, Judge Davis, in the case of Knickerbocker Hosp. v. Downing (65 Misc 2d 278). As such primary obligor, the liability of the department should not be abridged by reason of technical failures on the part of the defendant and third-party plaintiff herein or Mount Sinai Hospital. Insofar as I am concerned, the only effect of the failure of the hospital to bill the Department of Social Services is to curtail *6 the right of the hospital to collect interest on the claim now presented.
For all of the reasons herein stated and upon the testimony adduced during the trial, I direct the entry of judgment by the plaintiff against defendant and third-party plaintiff for the sum of $1,845 without interest or costs, and direct third-party plaintiff in turn to enter judgment against the third-party defendant in a like amount.