138 N.J. Super. 417 (1976)
351 A.2d 363
IN THE MATTER OF: FAIR HEARING DECISION IN THE CASE OF KING JAMES NURSING HOME RE: MARY NEMIS.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1975.
Decided January 8, 1976.
*419 Before Judges LYNCH, LARNER and FULOP.
Mr. Ned M. Cohn argued the cause for appellant King James Nursing Home (Messrs. Halpern, Schachter & Wohl, attorneys).
Mr. Robert E. Popkin, Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Serivces, Department of Institutions and Agencies (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
This is an appeal from the determination of the Division of Medical Assistance and Health Services of the Department of Institutions and Agencies of the State of New Jersey (Division) rejecting a Medicaid claim asserted by King James Nursing Home (Home) under the *420 program established by N.J.S.A. 30:4D-1 et seq. The claim was submitted for skilled nursing home services rendered to a patient, Mary Nemis, from July 12, 1972 to February 10, 1973. There is no dispute relating to the patient's eligibility for Medicaid assistance, the services rendered or the amount of the claim. The single basis for denial by the Division after an administrative hearing was the failure of the Home to submit the claim with accompanying documentation within six months from the "last day of the current billing month."
This six-month limitation is prescribed by Circular Letter No. 16 of the Division, dated December 7, 1971, as part of the administrative procedure established by the Division for governance of claims for Medicaid payments by nursing homes. The underlying legislation contains no provision for a limitation period for claims filed thereunder.
By virtue of directives issued by the Division a billing statement of a nursing home must be accompanied by a form designated as MCNH-7 and a status report reflecting whether the recipient is entitled to coverage under Medicare. Concededly, the procurement of form MCNH-7, which is an authorization for payment based upon welfare eligibility as determined by the county welfare board, is the responsibility of the Division, while the submission of the Medicare status report is the responsibility of the Home. Nevertheless, a directive of the Division instructs nursing care providers that form MCNH-7 must be submitted with the other billing forms for patients confined to a nursing home for more than 30 days.
The billing clerk of the Home testified that she had difficulty in obtaining the authorization form from the Middlesex County Welfare Board despite many contacts for that purpose. Nevertheless, on December 7, 1972 she forwarded the billing for Ms. Nemis to the Bureau of Claims and Accounts without that welfare authorization. Apparently the welfare board had the case registered in its records but did not comply with her request for the written authorization *421 form. She recognized that the billing documents of December 7, 1972 were not complete in this respect, and the Local Administrator of the Division testified that he could not proceed with a medical assessment without the welfare eligibility form.
When the Bureau received the billing it in turn forwarded to the Home a computerized error list dated December 8, 1972 which included, among others, the Nemis billing and stated "no status report," with no reference whatever to the welfare eligibility document or the MCNH-7 form. On March 1, 1973 the Home forwarded a letter demonstrating the Medicare status of the patient in substantial compliance with the "status report." At this time the Home did not resubmit a billing statement nor did it have for submission MCNH-7, although the evidence reflects that the Home had the Medicare status data as early as July 26, 1972.
Nothing further was done by the Home or the Division until the administrator of the Home wrote to the Division on March 11, 1974 requesting payment, pointing out that the patient was eligible, that the services were rendered, and that the delay was due in part to turnover of personnel at the Home and the Division.
A response to this resubmission was not forthcoming from the Division until November 13, 1974 when the Deputy Director advised the Home administrator that the claim was denied because it was not submitted within the six-month period set forth in Circular Letter No. 16. Thereafter, the Home requested a "Fair Hearing" by the Division, contending that "we did make a sincere effort to submit the proper claim and were unable to do so because we experienced difficulty in obtaining the necessary forms from the local Medical Assistance office." The hearing resulted in the affirmance of the denial and thereafter the pending appeal.
The Division rested its conclusion on the late filing of the status report, as well as the fact that its filing on March 1, 1973 was not accompanied by a new billing statement or MCNH-7. In arriving at its conclusion it refers to another *422 manual which appears to require a full resubmission of all documents with a status report submitted after a notice of corrective action.
From all the foregoing it is apparent that the relationship between nursing homes and the Division is governed by a morass of circular letters, directives and manual instructions. It is also manifest that the Division determined the validity of the claim herein on the basis of a technical failure to comply strictly with the procedural niceties created for the avowed purpose of screening claims as to validity and legitimacy. The decision below has no relationship to the merits of the claim.
There is no doubt that the Department has the power to adopt reasonable rules and regulations which are necessary to carry out its functions, under N.J.S.A. 30:4D-7 and its federal counterpart, 42 U.S.C.A. § 1396 et seq. And we cannot say that the six-month limitation in Circular Letter No. 16 is facially unreasonable as a matter of law.
It is sugested by the Division that such a limitation as well as the other billing procedures are essential in order to coincide with the computer system input, and that any deviation would require manual treatment and might result in a breakdown of efficiency in administration.
Yet, the controlling Circular Letter No. 16 does purport to permit waiver of the rigidity of the limitation provision in justifiable situations through the following provision:

NEW POLICY
Effective with the February, 1972 billing month, in those few cases where it is not possible for the nursing facility to claim reimbursement within the six month period, the written request for the unallowable portion must explain the circumstances that prevented the submittal of this claim within the required period. A decision relative to the payment of the overdue portion of the claim will be made based on the data submitted by the nursing facility supplemented by Divisional inquiry or investigation. It is expected that the overdue portion of such retroactive claims will not be approved for payment in those instances, where the claim could have been submitted within the time allowed.
*423 Our review of the particular facts presented in this record leads us to the conclusion that considerations of equity and justice demand a reversal of the Division's denial of payment. We cannot affirm a result which glorifies form and procedure so as to deny recovery for an admittedly legitimate claim. The confusion created in this case by a combination of factors involving dereliction by a subordinate agency in failing to submit form MCNH-7, and the misleading nature of the many directives and circular letters of the Division, are adequate reasons for invoking the exception contemplated by Circular Letter No. 16. And this result should follow despite the contributory neglect of the Home and its personnel. The mere expiration of 7 1/2 months instead of six months between the admission of the patient to the Home and the submission of the status report should not be seized upon as a basis for denying payment to a provider of services who has otherwise complied with the substantive requirements of the statute and regulations.
The issue involved herein has been considered by some trial courts of the State of New York where the parallel state agency has adopted a rule requiring the filing of a claim by a hospital within 12 months of the time when the services are rendered. In Mount Sinai Hospital v. Brinn, 73 Misc.2d 1, 341 N.Y.S.2d 208 (Civ. Ct. 1973), the court reviewed the facts relating to the claim and the filing delay and concluded that the one-year rule did not bar recovery from the state agency as the primary obligor. The following remarks are particularly relevant:
The case presents a classic example of the web of laws, rules, regulations and public assistance directives and requirements that have been enacted to preserve and protect the monies set aside to aid the needy which, by their volume and complexity, frustrate the very purpose for which the public assistance laws were enacted by our Congress and State Legislature. * * * These, coupled with strict bureaucratic interpretations of the applicable statutes, rules and regulations and the forms required to be submitted for qualification and eligibility, constitute a challenge which the most literate of lay persons would fail to meet. [341 N.Y.S.2d at 210] *424 See also, e.g., Mt. Sinai Hospital v. Kornegay, 75 Misc.2d 302, 347 N.Y.S.2d 807 (Civ. Ct. 1973); Brooklyn Hospital v. Criss, 76 Misc.2d 119, 122, 349 N.Y.S.2d 488, 491 (Civ. Ct. 1973).
As we have stated, we do not deny the right of the Division to establish a time limitation for the filing of a claim for payment, despite the absence of any statutory limitation period. Nevertheless, the rule relating to the time of filing of claims should be construed as directory in nature so as to avoid an injustice where the facts demand it. The strict application of the rule to the factual pattern in this case was an abuse of the discretionary power of the Division, whether tested by its own rules or the principles of equity applied by the court.
The Division urges a further ground in support of its position. It points out that federal regulations relating to the State's ability to obtain federal financial participation in this Medicaid payment will be curtailed because of a bar to such payment after a lapse of 24 months after the latest services have been rendered to the patient. 45 C.F.R. § 249.81(c).
The simple answer is that if the Division had approved payment to the Home at any time up to February 1975, it could have complied with the federal regulation. The delay produced by the pendency of this appeal cannot be utilized as a means of defeating the claim. Under these circumstances, whether or not the Division may be able to recoup a portion of the Medicaid payment cannot serve as a determinative factor in the decision of this appeal.
The decision of the Department of Institutions and Agencies is reversed and judgment entered in favor of King James Nursing Home for the full amount of the bill for services rendered to Mary Nemis.
FULOP, J.S.C. Temporarily Assigned (dissenting).
With great respect and with sympathy for the objective of the majority *425 opinion, I find myself unable to join therein or in the result arrived at.
The Medicaid program is a large, computerized operation. It cannot be carried on efficiently without enforcing reasonable rules. We all agree that the rules adopted by the Division are reasonable. There is no doubt that the Home failed to comply with the rules for many months. It is regrettable, but the loss must fall somewhere, either on the State or on the patient or on the Home. The error was that of the Home.
The Division has made no legal error. It has not abused its discretion. Its determination is neither arbitrary nor unreasonable. It is supported by sufficient credible evidence. This court has no discretionary power in the matter. The Division's determination must therefore be affirmed. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973). I vote to affirm.