67 A.3d 671

E.B., PLAINTIFF–APPELLANT, v. DIVISION OF MEDICAL
ASSISTANCE AND HEALTH SERVICES,
DEFENDANT–RESPONDENT.

E.S., PLAINTIFF–APPELLANT, v. DIVISION OF MEDICAL
ASSISTANCE AND HEALTH SERVICES,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 6, 2013—Decided June 5, 2013.

184

Before Judges SABATINO, FASCIALE and MAVEN.

*Jonathan M. Crist* of the Pennsylvania bar, admitted pro hac vice, argued the cause for appellants E.B. and E.S. (*Schutjer Bogar,* attorneys; *Grant Berger,* on the briefs).

*Vicki A. Mangiaracina,* Deputy Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa,* Attorney General, attorney; *Ms. Mangiaracina* and *Melissa Raksa,* Assistant Attorney General, on the brief).

The opinion of the court was delivered by

MAVEN, J.S.C. (temporarily assigned).

These three appeals, two of which (A–0637–11 and A–6110–10) have been previously consolidated and a third one (A–6111–10), which was calendared back-to-back with those cases,[1] challenge the issuance of Medicaid Communication No. 11–03,[2] dated Febru-

---

[1] We consolidate A–6111–10 with the other two appeals solely for purposes of this opinion. On remand, the matters involving the individual circumstances of E.B. and E.S., respectively, may continue to be addressed in separate administrative proceedings.

[2] Div. of Med. Assistance & Health Servs., Medicaid Communication No. 11–03 (Feb. 22, 2011), *available at* http://www.state.nj.us/humanservices/dmahs/info/

ary 22, 2011, by the Division of Medical Assistance and Health Services of the State of New Jersey Department of Human Services (Division or agency) that requires a Medicaid applicant or recipient to complete the Medicaid Designation of Authorized Representative (MDAR) form if the applicant wishes to appoint an authorized representative to act on the applicant's behalf. Plaintiffs brought this action for declaratory relief, seeking either the total elimination or a highly restrictive judicial interpretation of the MDAR form. They argue that the form requirement and the attendant denial of a fair hearing for failure to complete and submit the MDAR form violate federal and state laws, including the New Jersey Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –30.

For the reasons that follow, we conclude that the Division did not violate any federal or state laws or regulations regarding its decision to require applicants to complete a standardized assignment form such as the MDAR. Inasmuch as the Division is presently undertaking rulemaking in accordance with the APA to promulgate the adoption of the MDAR form, either in its present form or as it may be revised in light of comments received about the proposed rule, we deem that issue moot without prejudice to plaintiffs' right to appeal the ultimate adoption of a rule. We further direct that the Division proceed expeditiously with fair hearings to address the unresolved Medicaid penalty issues as to E.S. and E.B., provided that plaintiffs or someone on their behalf provisionally complete the Division's currently existing MDAR form, subject to the outcome of the rulemaking process and potential appellate review of the dispositions in the fair hearings.

I.

The precipitating facts underlying these actions involve E.S., a ninety-four-year-old woman who resides at the Masonic Home of

resources/medicaid/2011/11–03_Medicaid_Designation_of_Authorized_ Representative_Form.pdf (last visited May 1, 2013).

New Jersey (Masonic), and E.B., a ninety-five-year-old woman who resided at the Bayshore Health Care and Rehabilitation Center (Bayshore).[3] Masonic and Bayshore are collectively referred to as the "Facilities." E.S. and E.B. shall be jointly referred to as "plaintiffs." [4] In each instance, there is no dispute as to plaintiffs' respective eligibility for certain Medicaid assistance, as each plaintiff applied for and was awarded Medicaid benefits. However, upon receiving their respective determinations, plaintiffs' counsel sent a letter to the Division on behalf of each respective Facility requesting fair hearings to challenge the penalty periods imposed, and in E.B.'s case, also a denial of an Undue Hardship Waiver. In each case, the Division responded by sending counsel the MDAR form to complete if the resident wished to designate the Facility as the authorized representative, prior to the Division scheduling the requested fair hearings or otherwise addressing the merits of the appeals. The Facilities' counsel submitted its own signed but undated authorization forms in lieu of the MDAR form; however, the Division rejected these self-styled forms and no fair hearings were scheduled. These appeals followed.

Plaintiffs now raise the following contentions:

I. THE FACILITIES MAY PURSUE BENEFITS ON BEHALF OF PLAINTIFFS.

 A. The Division's Failure to Recognize the Assignment of These Rights and Benefits is Incorrect.

II. THE DIVISION'S FORM REQUIREMENT VIOLATES BOTH FEDERAL AND STATE LAW.

 A. The Division's Form Requirement Violates Federal Law.

---

[3] At oral argument, we were informed that E.B. passed away during the pendency of this appeal. At all times relevant to this case, E.B. resided at Bayshore.

[4] Although E.S. and E.B. are identified as the named plaintiffs, the Notices of Appeal state that counsel represents Masonic and Bayshore as assignees of E.S. and E.B. At oral argument, plaintiffs' counsel stated that he represented both the named plaintiffs and the Facilities.

i. The Division's Form Requirement is Preempted by the Medicaid Act and Regulations.

ii. The Division's Form Requirement Violates the Due Process Clause of the Fourteenth Amendment.

B. The Division's Form Requirement Violates State Law.

i. The Division's Form Requirement Violates *N.J.A.C.* 10:71–2.5(c).

ii. The Division's Form Requirement Violates *N.J.A.C.* 10:71–8.8.

iii. The Division Erred by Improperly Interfering with the Facilities' Right to Request an Appeal in Violation of *N.J.A.C.* 10:49–10.3.

iv. The Division's Form Requirement Violates the New Jersey Administrative Procedure Act.

III. THE DIVISION'S REFUSAL TO PROCESS THE FACILITIES' REQUESTS CONSTITUTES VIOLATIONS OF FEDERAL LAW AND STATE LAW.

A. The Division's Refusal to Process the Facilities' Requests Constitutes Violations of Federal Law.

i. The Division's Refusal to Process the Facilities' Requests Constitutes Violations of Federal Regulations.

B. The Division's Refusal to Process the Facilities' Requests Constitutes Violations of State Law.

i. The Division's Refusal to Process the Facilities' Requests Violates *N.J.A.C.* 10:71–2.5(c).

ii. The Division's Refusal to Process the Facilities' Requests Violates *N.J.A.C.* 10:71–8.8.

iii. The Division Erred by Improperly Interfering with the Facilities' Right to Request an Appeal in Violation of *N.J.A.C.* 10:49–10.3.

iv. Issue Preclusion Prevents Re–Litigation of the Issue of the Standing of a Skilled Nursing Facility to Pursue Appeals on Behalf of Its Residents.

Review of an agency decision by an appellate tribunal is limited. "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." *I.L. v. Div. of Med. Assistance & Health Servs.*, 389 *N.J.Super.* 354, 364, 913 *A.*2d 122 (App.Div.2006); *see H.K. v. Div. of Med. Assistance & Health Servs.*, 379 *N.J.Super.* 321, 327, 878 *A.*2d 16 (App.Div.), *certif. denied*, 185 *N.J.* 393, 886 *A.*2d 663 (2005); *see also Estate of F.K. v. Div. of Med. Assistance & Health Servs.*, 374 *N.J.Super.* 126, 138, 863 *A.*2d 1065 (App.Div.) (indicating that we give "considerable weight" to the interpretation and application of regulations by agency personnel within the specialized concern of the agency), *certif. denied*, 184 *N.J.* 209, 876

A.2d 283 (2005). Because the agency decision must be supported by substantial credible evidence, the reviewing court must examine the record to ascertain whether the action was "arbitrary, capricious or unreasonable[,] or beyond the ambit of the agency's delegated powers." *K.P. v. Albanese,* 204 *N.J.Super.* 166, 176, 497 *A.*2d 1276 (App.Div.), *certif. denied,* 102 *N.J.* 355, 508 *A.*2d 225 (1985); *see Univ. Cottage Club of Princeton v. N.J. Dep't of Envtl. Prot.,* 191 *N.J.* 38, 48, 921 *A.*2d 1122 (2007); *see also In re Taylor,* 158 *N.J.* 644, 656–57, 731 *A.*2d 35 (1999).

Also, "a court may not substitute its judgment as to the wisdom of an administrative action so long as it is statutorily authorized and not otherwise defective." *K.P., supra,* 204 *N.J.Super.* at 176, 497 *A.*2d 1276. Ultimately, the party challenging an agency's action bears the burden of demonstrating that the decision is arbitrary, capricious or unreasonable. *In re Arenas,* 385 *N.J.Super.* 440, 443–44, 897 *A.*2d 442 (App.Div.), *certif. denied,* 188 *N.J.* 219, 902 *A.*2d 1236 (2006); *see also Barone v. Dep't of Human Servs.,* 210 *N.J.Super.* 276, 285, 509 *A.*2d 786 (App.Div. 1986), *aff'd,* 107 *N.J.* 355, 526 *A.*2d 1055 (1987).

## II.

We begin with a review of pertinent aspects of the Medicaid program. The federal Medicaid Act, Title XIX of the Social Security Act, 42 *U.S.C.A.* §§ 1396 to 1396w–5, mandates a joint federal-state program to provide medical assistance to individuals "whose income and resources are insufficient to meet the costs of necessary medical services." 42 *U.S.C.A.* § 1396–1. Once a state joins the program, it must comply with the Medicaid statute and federal regulations. *United Hosps. Med. Ctr. v. State,* 349 *N.J.Super.* 1, 4, 793 *A.*2d 1 (App.Div.2002) (citing *Harris v. McRae,* 448 *U.S.* 297, 301, 100 *S.Ct.* 2671, 2680, 65 *L.Ed.*2d 784, 794 (1980)). It must also adopt "'reasonable standards ... for determining eligibility for ... medical assistance [that are] consistent with the objectives' of the Medicaid program," *Mistrick v. Div. of Med. Assistance & Health Servs.,* 154 *N.J.* 158, 166, 712

A.2d 188 (1998) (quoting *L.M. v. Div. of Med. Assistance & Health Servs.,* 140 *N.J.* 480, 484, 659 *A.2d* 450 (1995)), and "provide for taking into account only such income and resources as are ... available to the applicant." *N.M. v. Div. of Med. Assistance & Health Servs.,* 405 *N.J.Super.* 353, 359, 964 *A.2d* 822 (App.Div.), *certif. denied,* 199 *N.J.* 517, 973 *A.2d* 385 (2009); *see* 42 *U.S.C.A.* § 1396a(a)(17)(A)-(B).

The New Jersey Medical Assistance and Health Services Act, *N.J.S.A.* 30:4D-1 to -19.5, authorizes New Jersey's participation in the federal Medicaid program. The Division is the agency within the State Department of Human Services that administers the Medicaid program. *N.J.S.A.* 30:4D-7. Accordingly, this agency is responsible for protecting the interests of the New Jersey Medicaid Program and its beneficiaries. *N.J.A.C.* 10:49-11.1(b).

The Division has broad authority to administer the State Medicaid programs and plans, to ensure that those plans "provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients." 42 *U.S.C.A.* § 1396a(a)(19).

Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted by the Commissioner of the New Jersey Department of Human Services. *N.J.S.A.* 30:4D-7. Individuals seeking Medicaid must submit an application to their local County Welfare Agency (CWA)[5] for review for compliance with the regulatory requirements. *N.J.A.C.* 10:71-1.1. The State Medicaid program is administered in accordance with *N.J.A.C.* 10:71-2.2, which states:

---

[5] The CWA is a county government agency responsible for determining applicant eligibility for public assistance programs, such as AFDC–Related Medicaid, Temporary Assistance to Needy Families, the Food Stamp Program, NJ Family-Care and Medicaid. Depending on the county, the CWA might be identified as the board of social services, the welfare board, the division of welfare or the division of social services.

(a) The Division of Medical Assistance and Health Services is the administrative unit of the Department of Human Services responsible for coordinating the administration of Medicaid Only with the Supplemental Security Income program. This Division provides for payment of claims for, and evaluation of health services rendered under, Medicaid Only; maintains administrative liaison with other departmental divisions; and provides professional, medical and paramedical staff that is advisory to this Division in all matters of health care relevant to the administration of Medicaid Only. This Division contracts with CWAs for reimbursement of costs of administering the Medicaid Only program.

(b) The Division of Medical Assistance and Health Services and the Commissioner of the Department of Human Services shall establish policy and procedures for the application process and supervise the operation of and compliance with the policy and procedures so established.

(c) The CWA exercises direct responsibility in the application process to:

1. Inform the applicants about the purpose and eligibility requirements for Medicaid Only, inform them of their rights and responsibilities under its provisions and inform applicants of their right to a fair hearing;

2. Receive applications;

3. Assist the applicants in exploring their eligibility for assistance;

4. Make known to the applicants the appropriate resources and services both within the agency and the community, and, if necessary, assist in their use; and

5. Assure the prompt and accurate submission of eligibility data to the Medicaid status files for eligible persons and prompt notification to ineligible persons of the reason(s) for their ineligibility.

(d) The CWAs shall also provide supportive social services, which will enhance cure and rehabilitation of beneficiaries of Medicaid Only.

(e) As a participant in the application process, an applicant shall:

1. *Complete, with assistance from the CWA if needed, any forms required by the CWA as a part of the application process;*

2. Assist the CWA in securing evidence that corroborates his or her statements; and

3. Report promptly any change affecting his or her circumstances.

[*N.J.A.C.* 10:71–2.2 (emphasis added).]

The federal Medicaid regulations permit individuals to designate others to assist them in applying for benefits or otherwise communicating with the Medicaid agency. *See* 42 *C.F.R.* § 435.907(a) (2012) ("The agency must require a written application from the applicant, *an authorized representative,* or, if the applicant is incompetent or incapacitated, *someone acting responsibly for the applicant."* (emphasis added)); *see also* 42 *C.F.R.* § 435.908 (2012) ("The agency must allow an individual or *individuals of the applicant's choice* to accompany, assist, and represent the appli-

cant in the application process or a redetermination of eligibility." (emphasis added)).

Consistent with the Medicaid Act, the Division's stated policy is to encourage a person or his or her representative to apply for benefits. *N.J.A.C.* 10:49–2.17. The Division's adopted rules and regulations permit an applicant to submit an application through an authorized agent or representative. *See N.J.A.C.* 10:71–2.1 (an "applicant" is defined as an "aged, disabled or blind individual or his/her authorized agent who executes the formal written application").

*N.J.A.C.* 10:71–2.5 outlines the Medicaid application procedure:

(c) In Medicaid Only, an individual who wishes to apply may be confined at home or at an institution, or may be subject to a critical illness or injury which impedes action on his or her own behalf. Consequently, the CWA shall accept any one of the following, in order of priority as listed, as an authorized agent for the purpose of initiating an application:

1. A relative by blood or marriage;

2. A staff member of a public or private welfare agency of which the person is a client, who has been designated by the agency to so act;

3. A physician or attorney of whom the person is respectively a patient or client; or

4. A staff member of an institution or facility in which a person is receiving care, who has been designated by the institutional facility to so act.

[*N.J.A.C.* 10:71–2.5(c) (emphasis added).]

While both federal and state regulations provide that an "authorized agent" or person of choice may be designated by the applicant/recipient, neither specify how the designation should occur. To assist CWAs with implementation of these provisions, the Division issued Medicaid Communication No. 11–03, which included a standardized form titled "Medicaid Designation of Authorized Representative Form." The Division explains in its brief:

Because there may be any number of ways an applicant could assert his choice to have someone apply for benefits on his behalf, [the Division] created a form to promote consistency throughout the twenty-one county welfare agencies throughout the State. Additionally, use of the form helps to expedite the application process in that the county welfare agency need not divert time and effort away from determining an applicant's Medicaid eligibility to evaluate the appropriateness

or legality of any other "authorization" documents that might be presented to it. Additionally, the person named on the [MDAR] form becomes the contact point for all questions or issues regarding the application or hearing process.

The form also serves to protect applicants by assuring that the applicant or his or her guardian: has made the authorization freely and voluntarily; knows whom he is appointing as his representative; knows that that representative will have access to financial and medical information; knows that he can revoke the authorization at any time . . .; and has been made aware of any actual or potential conflicts of interest and has waived those conflicts. The [MDAR] form also provides that the person appointed as the authorized representative can act as representative "in all reviews of [the applicant's] eligibility." ([T]hat is, throughout any appeal process). To further assure the legitimacy of the authorization, each paragraph must be initialed by the applicant or the person authorized to act on his behalf. In addition, the signature of the Medicaid applicant or person with legal authority and the signature of the authorized representative must be witnessed.

[ (Citations omitted).]

## III.

Against this factual background, we now consider the first set of claims that allege the MDAR form requirement violates federal and state laws.

## A.

 Plaintiffs contend that the form requirement is invalid due to federal preemption of state law. Preemption arises where it would not be possible to comply with both federal and state laws at the same time, "or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective[s] of Congress.'" *Pac. Capital Bank, N.A. v. Connecticut,* 542 *F.*3d 341, 351 (2d Cir.2008) (alteration in original) (quoting *United States v. Locke,* 529 *U.S.* 89, 109, 120 *S.Ct.* 1135, 1148, 146 *L.Ed.*2d 69, 89 (2000)). Where compliance with both federal and state law is impossible, the federal statutory or regulatory provision nullifies the state provision. *Farina v. Nokia, Inc.,* 625 *F.*3d 97, 115 (3d Cir.2010), *cert. denied,* —— *U.S.* ——, 132 *S.Ct.* 365, 181 *L.Ed.*2d 231 (2011).

In this case, plaintiffs argue that the MDAR form, stating that all notices and correspondence will be sent *to the applicant's authorized representative,* directly conflicts with the federal Medicaid regulation, 42 *C.F.R.* § 431.206 (1993), that requires state and county agencies to "inform *every applicant or beneficiary* in writing . . . of his right to a hearing[,] . . . the method by which he may obtain a hearing" and of his right to represent himself personally or to designate another party to so represent him. (Emphasis added).

In response, the Division contends that the form comports with relevant federal and state laws, which both permit the applicants to designate someone to represent them in the eligibility process. As the form does not place limits on whom the applicant may select as his authorized representative, the Division maintains that it has not created an obstacle to implementation of the federal Medicaid law.

Reviewing the record here, we can discern nothing in plaintiffs' argument that explains how the Division's MDAR form conflicts with federal law. Accordingly, we conclude that no conflicts exist in the use of this form that would trigger federal preemption. The State regulations provide alternative means for Medicaid applicants/recipients to communicate with CWAs or the Division. The State regulations provide that the applicant may authorize, and the CWA or the Division shall accept, another individual in the order of priority as set forth in *N.J.A.C.* 10:71–2.5(c). That provision is consistent with the federal regulations.[6]

---

[6] In *Monmouth Med. Ctr. v. State,* 158 *N.J.Super.* 241, 249, 385 A.2d 1244 (App.Div.1978) *aff'd,* 80 *N.J.* 299, 403 A.2d 487, *cert. denied,* 444 *U.S.* 942, 100 *S.Ct.* 297, 62 *L.Ed.*2d 308 (1979), this court stated "[t]here is no doubt . . . that the Department has the power to adopt reasonable rules and regulations which are necessary to carry out its functions under *N.J.S.A.* 30:4D–7 and its federal counterpart, 42 *U.S.C.A.* § 1396 et seq." *See Estate of V.M. v. Div. of Med. Assistance & Health Servs. & Bergen County Bd. of Social Servs.,* 385 *N.J.Super.* 165, 169, 896 A.2d 503 (App.Div.2006); *In re King James Nursing Home,* 138 *N.J.Super.* 417, 422, 351 A.2d 363 (App.Div.1976).

## B.

■ Next, plaintiffs argue that the form requirement interferes with their right to a fair hearing, in contravention of federal and state laws. In essence, they claim that the completion of the form becomes an unauthorized prerequisite to processing their hearing requests.

An applicant has the right to challenge an adverse determination of eligibility through a fair hearing, and federal regulations require that the state Medicaid agency inform every applicant, at the time he or she applies for Medicaid, of the right to a hearing. *42 C.F.R.* § 431.206 (1993). The federal regulations also require the state agency to advise the applicant, in writing, of his or her rights and responsibilities in the application process. *42 C.F.R.* § 435.905(a) (2012). Our State regulation, *N.J.A.C.* 10:49–10.3(b), provides:

> An opportunity for a fair hearing shall be granted to all claimants requesting a hearing because their claims for medical assistance are denied or are not acted upon with reasonable promptness, or because they believe the Medicaid Agent ... has erroneously terminated, reduced or suspended their assistance ....

> A request for hearing shall be defined as any clear expression (submitted in writing) by claimants (*or someone authorized to act on behalf of claimants* ) to the effect that they desire the opportunity to present their case to higher authority[.]

[ (Emphasis added).]

Here, plaintiffs received notice of their eligibility for benefits in correspondence addressed to their attorney, as authorized agent, as permitted by *N.J.A.C.* 10:71–2.5(c). The letter, State form number 400–093 (rev.10/06), contained a section titled "FAIR HEARING NOTICE" that informed the applicant of his or her right to request a fair hearing within twenty days. On the second page of that form, titled "FAIR HEARING REQUEST," the center of the page contained the applicant's rights section, detailing, among other things, the right to present the applicant's "own case[,] or have *a relative, friend or attorney* make the presentation." (Emphasis added).

Plaintiffs' attorney responded to the Division requesting a fair hearing *on behalf of the respective Facility.*[7] Had counsel requested the fair hearings in their capacity as the plaintiffs' legal representative, we suspect that this matter would not have caused the CWA any concern. However, as it appeared that the Facilities were attempting to assume the rights and entitlements of plaintiffs, the Division, through the CWA, had the obligation to ensure that plaintiffs made proper authorizations designating the Facilities as their representatives. *See N.J.A.C.* 10:71–2.5(c)(4).

The Facilities submitted their respective authorization forms in lieu of the MDAR form, in which plaintiffs purportedly demonstrated an intent to transfer, or assign, their Medicaid benefits to the Facilities. In citing to *Tirgan v. Mega Life & Health Insurance,* 304 *N.J.Super.* 385, 390, 700 *A.*2d 1239 (Law Div.1997), counsel for plaintiffs argues that his clients' undated executed forms evidence valid assignments under the law that: (1) express an intent to transfer their rights; (2) contain subject matter that is "described sufficiently to make it capable of being readily identified;" and (3) provide clear and unequivocal notice to the obligor. First, counsel contends that plaintiffs' respective signed Authorization Statements demonstrate the intent to transfer, or assign, their Medicaid benefits. Second, the assignments are sufficiently described because the Facilities have the "right to receive Medicaid benefits," which authorize them to receive the benefits as payment for services rendered and take actions to

---

[7] The letter sent in the E.B. case stated:

This firm represents Bayshore ... with regard to its Medicaid eligibility and reimbursement needs. Bayshore is the skilled nursing facility where [E.B.] is currently a resident. On June 23, 2011, the Monmouth County Division of Social Services ("MCDSS") approved [E.B.'s] Medicaid application, but instituted a penalty period consisting of nine (9) months and sixteen (16) days. Bayshore hereby appeals the penalty described in the attached eligibility notification and requests a fair hearing on this matter.

The letter sent to the Division in the E.S. case stated: "This firm represents ... Masonic Home ... with regard to the above-referenced individual. Masonic Home hereby appeals the eligibility date as set forth in the attached notice and requests a fair hearing."

qualify plaintiffs for Medicaid benefits. Third, the assignment was clear and unequivocal because the assignment "irrevocably assigns" rights to the Facilities.

As such, plaintiffs argue that the Facilities are "afforded all of the rights that [plaintiffs] are or would be entitled to." In their reply briefs, plaintiffs add that they remain the Medicaid "applicants" and the Facilities are not attempting to substitute themselves as the "applicants" in these matters.[8] Further, plaintiffs contend that the Facilities have only been assigned the "right to receive Medicaid benefits" and "right to take those actions that are required to secure" those benefits.

The Division counters that "the use of the [MDAR] form is a reasonable and prudent step for [the Division] to ensure the applicant is being represented by the person of his or her choosing and to protect the integrity of the Medicaid program." Further, "[i]f that form is not completed and submitted, [the Division] cannot act[,] as there is no basis to list [the Facilities] as [plaintiffs'] representative[s]." The Division also argues that Medicaid eligibility is not fungible, and since plaintiffs' benefits are paid directly to the Facilities, there is no need for plaintiffs to assign their right to receive payments to the Facilities. Finally, the agency states: "despite asserting that [they are] acting on [plaintiffs'] behalf as ... authorized representative[s], [the Facilities] refuse[ ] to provide a signed [MDAR] form reflecting that relationship, asserting various constitutional, statutory and regulatory objections."

In general, and subject to other governing law, "[p]arties have a right to contract in any way they see fit." *Triffin v. Bank of Am.*, 391 *N.J.Super.* 83, 89, 917 *A.*2d 257 (App.Div.2007) (citation omitted). However, "[i]t is well-settled that the dictates of public policy may require invalidation of private contractual arrangements where those arrangements directly contravene ex-

---

[8] Plaintiffs acknowledge that the Facilities would be disqualified for several reasons, including the fact that their resources exceed $2000.

press legislative policy *or are inconsistent with the public interest or detrimental to the common good."* *Sacks Realty Co., Inc. v. Shore,* 317 *N.J.Super.* 258, 269, 721 *A.*2d 1011 (App.Div.1998) (emphasis added). The courts employ a balancing test that weighs the legislative policy and the public interest against the enforcement of the contractual provision in order to determine whether to void the contractual provision. *Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C.,* 273 *N.J.Super.* 374, 378, 641 *A.*2d 1129 (Law Div.1992), *aff'd,* 273 *N.J.Super.* 231, 641 *A.*2d 1056 (App.Div.), *certif. denied,* 137 *N.J.* 314, 645 *A.*2d 142 (1994); *see Triffin, supra,* 391 *N.J.Super.* at 87, 917 *A.*2d 257.

As we have already made plain, under Medicaid's federal regulations, "[t]he agency must require a written application from the applicant, *an authorized representative,* or, if the applicant is incompetent or incapacitated, *someone acting responsibly for the applicant."* 42 *C.F.R.* § 435.907 (2012) (emphasis added). In furtherance of this provision, *N.J.A.C.* 10:71–2.5(c) allows for the appointment of an "authorized agent for the purpose of initiating an application" for an applicant who is critically ill or "confined at home or at an institution." As previously stated, no federal or state regulation defines how an "authorized representative" is to be designated. In the absence of such legislation or regulatory direction, the Facilities where plaintiffs live, and perhaps countless other facilities and individuals, have created private contractual assignments that allow them to pursue Medicaid benefits on behalf of their residents. In response to receiving numerous variations of these agreements, the Division created the MDAR form.

While we cannot fault plaintiffs' counsel for attempting to fashion their own remedy for the perceived lapse in the authorization process, we are of the view that the assignment contracts proffered by the Facilities present significant regulatory problems given their marked differences from the Division's MDAR form. These differences are explained as follows:

a) *Appointment of Representative*

The MDAR form provides that only one person can be appoint-

ed as the applicant's representative.[9] The form requires the representative's name, company affiliation, address, and phone number. The Facilities' form assigns plaintiffs' rights to a myriad of personnel, including the entire facility, "employees, agents and/or attorneys." No personal contact information is requested on the form.

b) *Notification Made to Representative Only*

The MDAR form acknowledges applicant's authorization to send all agency correspondence to the Authorized Representative. The Facilities' documentation does not include this language, and as noted above, the form does not request any contact information for the representative.

c) *Confidentiality Waiver and "Hold–Harmless" Provisions*

The Facilities' documentation provides that the applicant "hereby waive[s] any and all claims of confidentiality relating to ... [his or her] records and/or information." The MDAR form does not specifically address a waiver of confidentiality. Rather, the form states that the applicant "hold[s] [the Division] and the [county agencies and service providers] harmless for any claim or action resulting from the use or disclosure of information by [the] Authorized Representative." Additionally, the applicant must acknowledge that "information shared with [the] Authorized Representative may affect [his or her] liability to a third party." The Facilities' documentation does not include these clauses or other related language.

d) *Conflict of Interest Waiver*

The MDAR form states that the applicant has "been fully informed in writing by the Authorized Representative of actual or

---

[9] The Division acknowledges that plaintiffs are "free to appoint an employee" from the Facilities as representatives, but the agency is "merely seeking to be assured that if it is not the applicant who is making the application (or pursing an appeal), that the person who is doing so as the applicant's representative is in fact so authorized."

potential conflicts of interests that may exist between the above[-]named entity and [applicant]. [The applicant] ... waive[s] any conflict of interest. If there is no conflict of interest, the Authorized Representative has also put that in writing." The Facilities' documentation does not include this same, or otherwise related, language.

### e) *Disclosure of Applicant's Personal Information*

The MDAR form outlines that the applicant authorizes the Division to disclose his or her personal information to the representative, including "Social Security number, financial statements, medical information and the reasons for denial." The Facilities' form uses broader language, stating that the recipient authorizes the representative(s) to "secure, from any third party, any and all financial and/or other records to secure ... benefits" and "communicate with any party regarding the personal financial and/or other information as needed to secure said benefits."

### f) *Revocation of Authorization*

In the MDAR form, the applicant can revoke his or her authorization of a representative at any time by contacting the representative and the CWA in writing. In the Facilities' documentation, plaintiffs have "irrevocably assign[ed]" their rights.

### g) *No Fee Charged for Application Processing*

The MDAR form includes a provision that neither the State of New Jersey nor the CWAs can charge a fee for filing a Medicaid application. The Facilities' form does not include such language.

### h) *Witness Verification of Signatures*

At the bottom of the MDAR form, it states: "This form has no effect unless witnessed and signed by the person granting authority and by the Authorized Representative or an agent of the company appointed to be the Authorized Representative." On the other hand, the Medicaid beneficiary must sign the Facilities'

documentation, but the form does not require the representative's signature. Also, the beneficiary's signature does not require third-party verification.

### i) *Initialing of Each Paragraph on the MDAR form*

The MDAR form requires that the applicant initial each paragraph. The Facilities' documentation does not require these additional acknowledgments.

In comparing the parties' forms, it is clear that on its face, the Facilities' authorization form does not provide the same information or assurances sought by the Division. At oral argument, plaintiffs' counsel conceded that their form may be no better than the Division's form.[10] The MDAR form appears to provide greater substantive and procedural protections for the Medicaid applicant in a manner consistent with federal and state mandates.

We are mindful that "[t]he power of a court to declare a contractual provision void as against public policy must be exercised with caution and only in cases that are free from doubt. The illegality must be clear and certain." *Saxon, supra,* 273 *N.J.Super.* at 377, 641 *A.*2d 1129 (citation omitted). While we need not go so far as to declare the private form illegal, a brief review of the policy underpinnings of the Medicaid program is central to the comparison of these forms.

Medicaid provides free or low-cost health coverage to millions of children, families, pregnant women, the elderly, and people with disabilities. Medicaid, Healthcare.gov, *available at* http://www.healthcare.gov/using-insurance/low-cost-care/medicaid (last visited May 1, 2013). This program has various eligibility criteria in order to ensure that applicants qualify for those services.

---

[10] As to these particular plaintiffs, counsel could not represent when the forms were signed, as they were intentionally left undated, nor that the women were mentally competent when they signed their authorization forms. As such, we consider these forms to be completely unreliable and fatally flawed.

The ability to assign an applicant's right to pursue Medicaid benefits, without proper procedural protections, could create many problems as the Division asserts, including fraud and lack of accountability. We do not view the Division's concerns regarding the "potential for fraud or for use of an applicant's confidential financial (and other) information for nefarious or criminal purposes such as Medicaid benefit fraud or identity theft" as mere litigious exaggeration or unfounded hyperbole. Rather, this is a matter of such importance that in 2010, the New Jersey Legislature passed the Medicaid Program Integrity and Protection Act, *N.J.S.A.* 30:4D-53 to -64, establishing the Office of the Medicaid Inspector General to detect, prevent and investigate Medicaid fraud and abuse; recover improperly expended Medicaid funds; enforce Medicaid rules and regulations; audit cost reports and claims; and review quality of care given to Medicaid recipients. In furtherance thereof, Governor Chris Christie signed *L.* 2010, *c.* 33, eff. June 29, 2010, which officially transferred these functions, powers and duties to the Office of the State Comptroller. The Office of the State Comptroller then created the Medicaid Fraud Division.[11]

Here, plaintiffs' private contracts potentially jeopardize the applicants' rights in many ways, including, among other things, the irrevocability of the assignments and appointment of numerous, unnamed representatives. In the latter circumstance, for example, the Facility, hypothetically, could name a low level clerk or a custodian for that matter, giving that person access to the Medicaid recipient's private information. On the other hand, the MDAR form provides additional protections, such as witness verification of applicant and representative's signatures and revocation of the appointment "at any time."

---

[11] The Medicaid Fraud Division conducts investigations of fraud, waste and abuse, performs background checks on all Medicaid provider applicants, and coordinates oversight efforts among all State agencies that provide and administer Medicaid services and programs.

In light of the Division's statutory responsibilities in administering the Medicaid program and its legitimate interests in protecting the vulnerable population of Medicaid recipients, we conclude that the Division's form requirement does not impede, but rather preserves, plaintiffs' rights to have a fair hearing by ensuring that an appropriately designated individual represents them in agency proceedings.

## C.

The Division contends that federal enabling legislation allows it the authority to create this MDAR form and is "reasonably related to its obligation to monitor the provision of Medicaid services by establishing procedures by which it can assure the quality of services as well as the detection of fraud." *Gabor v. Hyland,* 166 *N.J.Super.* 275, 278, 399 *A.*2d 993 (App.Div.1979). In *Gabor,* we upheld the Division's requirement that a standardized medical authorization form be completed before releasing recipient's confidential information. *Id.* at 276, 280, 399 *A.*2d 993. In upholding the Division's position, we concluded that the State's insistence on a standardized form as a condition of scheduling a fair hearing or processing an appeal "is, on its face, in no way constitutionally offensive and is ... a requirement reasonably related to its obligation to monitor the provision of Medicaid services by establishing procedures by which it can assure the quality of services." *Ibid.* Here, as in *Gabor,* the Division's determination of the necessity of a standardized form in order to enforce its regulations designed to protect the Medicaid program is unquestionably reasonable. Moreover, because the party challenging the agency's action must demonstrate that the decision is arbitrary, capricious, or unreasonable, *Arenas, supra,* 385 *N.J.Super.* at 443–44, 897 *A.*2d 442, we determine that plaintiffs have not satisfied that burden as to the Division's decision to require completion of a general standardized form.[12]

---

[12] We reserve for the completion of the rulemaking process, and a potential future appeal of an adopted rule, the more specific question as to whether the

## IV.

■ We turn now to plaintiffs' argument that the MDAR form requirement violates the APA by implementing a widespread, uniform application of a procedure to all similarly situated individuals. The Division counters that the MDAR form need not be adopted as a rule in order to be valid because it is a "regulatory guidance document," as authorized by *N.J.S.A.* 52:14B–3a. They contend that the law defines a regulatory guidance document as "any policy memorandum or similar document used by a State agency to provide technical or regulatory assistance or direction to the regulated community to facilitate compliance with State or federal law or a rule adopted pursuant to [the APA]." *N.J.S.A.* 52:14B–3a(d).

■ The APA guides State agencies in the implementation, amendment, repeal, or adoption of rules. An agency, however, has administrative authority to conduct informal action without a trial-type hearing, which is not subject to the weighty rulemaking provisions of the APA. *See Deborah Heart & Lung Ctr. v. Howard*, 404 *N.J.Super.* 491, 502–03, 962 *A.*2d 577 (App.Div.) (stating that an informal agency action was "not subject to the APA's requirements governing adoption of agency rules"), *certif. denied*, 199 *N.J.* 129, 970 *A.*2d 1046 (2009). Such action includes "investigating, publicizing, negotiating, settling, advising, planning, and supervising a regulated industry." *Id.* at 503, 962 *A.*2d 577 (quoting *Nw. Covenant Med. Ctr. v. Fishman*, 167 *N.J.* 123, 136–37, 770 *A.*2d 233 (2001)). These types of actions "constitute[ ] the bulk of the activity of most administrative agencies." *Ibid.* (quoting *In re Request for Solid Waste Util. Customer Lists*, 106 *N.J.* 508, 518, 524 *A.*2d 386 (1987)).

■ On the other hand, "an agency may not use its power to interpret its own regulations as a means of amending those

---

agency's finalized version of the MDAR form is arbitrary, capricious, or unreasonable in any particular respects.

regulations or adopting new regulations." *Venuti v. Cape May County Constr. Bd. of Appeals,* 231 *N.J.Super.* 546, 554, 555 *A.*2d 1175 (App.Div.1989). "The manner in which an agency exercises broad discretion 'may be governed by the [APA].'" *Besler & Co., Inc. v. Bradley,* 361 *N.J.Super.* 168, 173, 824 *A.*2d 289 (App.Div. 2003) (alteration in original) (quoting *St. Barnabas Med. Ctr. v. New Jersey Hosp. Rate Setting Comm'n,* 250 *N.J.Super.* 132, 143, 593 *A.*2d 806 (App.Div.1991)).

In order to avoid abuse of these broad administrative powers, our Supreme Court enumerated six factors that are weighed to determine whether agency action must be designated as an administrative rulemaking requiring implementation through the APA. *Metromedia, Inc. v. Dir., Div. of Taxation,* 97 *N.J.* 313, 331–32, 478 *A.*2d 742 (1984). The Court explained:

> Such a conclusion would be warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only on future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.
>
> [*Ibid.*]

Here, the Division states that Medicaid Communication No. 11–03 and the MDAR form were created and issued

> to provide direction on how to comply with federal and State Medicaid law[s] concerning applications, fair hearings and use of authorized representatives. They compile, synthesize and explain, in one place, the requirements that the application be in writing, that an applicant has the right to have an authorized representative assist him or her in the application and/or appeals process and that an applicant has the responsibility to provide the [CWA] and [the Division] with whatever information is needed to establish the applicant's eligibility.

It is clear from the Division's argument that neither federal nor State regulations provide a methodology for designating the authorized representative, which has resulted in the agency's concern over inconsistencies among the CWAs, as well as the potential for fraud and misrepresentation. We agree with the Division that these concerns constitute a valid and laudable purpose for implementing the MDAR form. We recognize further that "one of the acknowledged advantages of the administrative process 'has been its flexibility in enabling administrators to deal justly with unanticipated as well as anticipated situations in accordance with general legislative guides.'" *In re N.J.A.C. 7:1B–1.1 et seq.*, 431 *N.J.Super.* 100, 115–16, 67 *A.*3d 621, 2013 *WL* 1150506 (App.Div. 2013) (quoting *Ward v. Scott,* 11 *N.J.* 117, 127, 93 *A.*2d 385 (1952)).

During the pendency of this appeal, the Division has commenced the APA rulemaking process proposing to adopt a standardized MDAR form into its regulations.[13] On March 5, 2013, the Division filed its proposed amendment to *N.J.A.C.* 10:71–2.5 to add another subsection with the following language: [14]

(d) To ensure that any such representative seeking to file the application is authorized to represent the applicant, the Division's Designation of Authorized Representative form at *N.J.A.C.* 10:49 Appendix Form # 15 shall be completed and submitted, except as provided in (d)(1) below. No other form or document shall be used.

(1) Use of the Division's Designation of Authorized Representative Form is not required if the authorized representative is the beneficiary's legal guardian, a relative by blood or marriage, the attorney of the beneficiary hired by the beneficiary to represent the beneficiary, or a person with power of attorney for the beneficiary.

---

[13] Plaintiffs posit that the current rulemaking concedes the Division's argument that the appropriate manner to invoke the general applicability of the MDAR form is through formal rulemaking. Although the Division did not make such a concession, its actions irrefutably render moot our need to undertake a *Metromedia* analysis to determine if the agency action, by issuing Medicaid Communication No. 11–03, required rulemaking.

[14] Nearly identical language has been proposed for amendments to *N.J.A.C.* 10:49–10.3, *N.J.A.C.* 10:49 Appendix, *N.J.A.C.* 10:69–2.4, and *N.J.A.C.* 10:72–2.1.

[45 *N.J.R.* 716(a) (Apr. 1, 2013).]

Pursuant to *N.J.S.A.* 52:14B–4(a)(3), comments from "all interested persons" on the proposed rule were due by June 3, 2013. Regardless of our present assessment of plaintiffs' legal arguments, certain practical concerns may be best addressed in the context of the rulemaking process. At oral argument, for example, plaintiffs' counsel questioned how or by whom the MDAR form would be completed in situations when the Medicaid recipient is without any interested family members to act on his or her behalf, or is incapacitated, incompetent or, in E.B.'s case, deceased. Granting that a guardian may be appointed by the Court, pursuant to *Rule* 4:26–2, to act on the applicant or recipient's behalf, the Division may not have fully considered the practicalities raised by plaintiffs. We should think that such concerns and others would be appropriately addressed during the rulemaking process.

## V.

We have surmised above that the creditable intent or purpose of the MDAR form requirement is to render more consistent the authorized representative designation process, while concomitantly protecting our State's most vulnerable citizens from potential fraud and misrepresentation. Toward that end, we consider it contrary to the best interests of plaintiffs, the Facilities and the Division to permit a void in this area of patient care while the agency promulgates the proposed rules. We are also cognizant that the present rulemaking process will not resolve plaintiffs' current payment issues. In balancing the interests of the parties and the public, we have, on occasion, permitted an agency to continue applying the regulation in question while rulemaking proceeds.[15] The "temporary validity doctrine," first espoused in

---

[15] "It is ... well established that when the public interest requires, a court is not obliged to void immediately administrative rules not adopted in conformity with the APA." *Dep't of Corr. v. McNeil,* 209 *N.J.Super.* 120, 125, 506 A.2d 1291 (App.Div.) *certif. denied,* 104 *N.J.* 422, 517 A.2d 418 (1986); *see* 37 *New Jersey*

*K.P. v. Albanese, supra,* 204 *N.J.Super.* at 173–74, 497 *A.*2d 1276, allows an agency to continue using those current processes during a remand for agency rulemaking in compliance with the APA. Thereafter, we invoked the doctrine in *In re Commissioner's Failure to Adopt 861 CPT Codes,* 358 *N.J.Super.* 135, 147, 817 *A.*2d 355 (App.Div.2003), where we determined not to void the rule for procedural irregularity. Rather, we directed that "the present system should remain in effect pending agency action." *Ibid.* (citations omitted).

At oral argument, plaintiffs' counsel implied that there were other facilities and residents similarly situated to plaintiffs here and implored us for speedy resolution of this matter. Related thereto, the Division counsel informed that there are many more Medicaid recipients who comply with the form requirement than object. Nevertheless, the objective is to develop a procedure to ensure consistent application by all twenty-one CWAs and to protect this segment of the public.

Toward that end, and in accordance with our aforementioned conclusions, we hereby impose a curative temporary remand to the Division for the purpose of completing the adoption of the regulations, with possible modifications, in accordance with APA rulemaking procedures. Pending such rule adoption, the present system now being implemented, namely Medicaid Communication No. 11–03, shall remain in full force and effect until the promulgation of the proposed rule or until December 31, 2013, whichever occurs first. If new rules are not promulgated by December 31, 2013, then Medicaid Communication No. 11–03 shall be deemed null and void as of that date.

As to the merits of these appeals, on remand, we direct plaintiffs [16] to complete the MDAR form, without prejudice to any

---

*Practice, Administrative Law and Practice* § 3.14, at 124 (Lefelt, Miragliotta and Prunty) (2d ed. 2000) ("Curative Remand of Invalid Rules").

[16] Notwithstanding E.B.'s death, the claims raised in her request for a fair hearing remain active and germane to the Facility's claim for payment for

rights they have to seek further review of this judgment or their rights under the APA, should they participate in that rulemaking process. After receipt of the completed MDAR form, the Division shall expeditiously process plaintiffs' requests for appeal and fair hearings, and address the outstanding issues raised in accordance with the Division's ordinary regulatory procedures.

The remaining arguments raised in this appeal are without sufficient merit to warrant discussion in this opinion. *R.* 2:11–3(e)(1)(E).[17]

We do not retain jurisdiction.

---

services rendered. The form may be completed by E.B.'s executor or administratrix, if any. In the case for E.S., as indicated above, nothing herein precludes the form from being executed by a court-appointed guardian.

[17] Plaintiffs' claims of alleged arbitrary action by the Division, related to the promulgation of any regulations and the validity of any finally-adopted MDAR form, may be raised anew in a properly filed appeal of any such final agency action.