**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0593-17T4

N.P.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and UNITED
HEALTHCARE COMMUNITY
PLAN,

      Respondents-Respondents.

_____

Submitted December 6, 2018 – Decided May 24, 2019

Before Judges O'Connor and DeAlmeida.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Disability Rights New Jersey, attorneys for appellant (August L. Pozgay, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

Stradley Ronon Stevens & Young, LLP, attorneys for respondent United Healthcare Community Plan (Corey S. D. Norcross, on the brief).

PER CURIAM

Petitioner N.P. appeals from the September 27, 2017 final agency decision of the Division of Medical Assistance and Health Services (Division), which reversed the Administrative Law Judge's (ALJ) initial decision. The initial decision found respondent United Healthcare Community Plan (United), a managed care organization (MCO), failed to provide petitioner with notice of its adverse benefit determination, contrary to N.J.A.C. 10:49-10.4 and 42 C.F.R. 438.404, and ordered United to provide the proper notice to petitioner. The ALJ contemplated that after proper notice was served upon petitioner, a fair hearing would be scheduled on the underlying substantive issue. For the reasons that follow, we vacate the Division's final decision and remand for further proceedings.

I

Petitioner is a severely impaired young woman, who resides at home with her father, her primary caregiver. She requires monitoring twenty-four hours a day. She cannot eat or speak, and is unable to sit, stand or change positions on

2

her own. She is fed and hydrated through a gastrostomy tube. She needs oral suctioning to prevent her from choking. She experiences frequent seizures, which occur even when she sleeps, for which she requires treatment.

In 2000, petitioner commenced receiving sixteen hours a day of private duty nursing (PDN) in her home. In 2016, she was receiving PDN from 3:00 p.m. to 10:00 p.m. and from 11:00 p.m. to 8:00 a.m. Petitioner attends school during the week from 8:00 a.m. to 3:00 p.m. When she is not in school or there is no nurse in her home, she is cared for by her father.

Petitioner's nursing care is paid by Medicaid. In particular, United pays the nursing agency for the cost of providing nurses to petitioner and United is compensated by Medicaid. As a MCO, United contracted with the State to provide or to oversee providing services to Medicaid beneficiaries in exchange for a fixed, prospective payment from the State for each beneficiary. See generally Medicaid Program; Medicaid Managed Care: New Provisions, 67 Fed. Reg. 40,989 (June 14, 2002).

In early 2016, United notified petitioner's father it was reducing petitioner's PDN services from 112 to 77 hours per week, effective March 1, 2016. United's reason was that, as her primary caretaker, the father was required to provide petitioner with at least eight hours of care every day. Petitioner

internally appealed United's determination, see N.J.A.C. 11:24-8.5, but it was upheld. Petitioner filed a second internal appeal, see N.J.A.C. 11:24-8.6(a), but United's determination was again upheld. Petitioner filed an external appeal pursuant to N.J.A.C. 11:24-8.7(a), and the Department of Banking and Insurance assigned the appeal to an independent utilization review organization (IURO) for its review and decision.

On May 5, 2016, the IURO issued a written decision recommending that United's decision to reduce petitioner's PDN from 112 to 77 hours per week be overturned, because petitioner's need for 16 hours of PDN per day was medically necessary in light of her medical condition. Specifically, the IURO's written opinion stated in pertinent part:

> [Petitioner] meets medical necessity criteria for confinement in a skilled nursing facility, and placement of the nurse in the home is done to meet the skilled needs of [petitioner] only, not the convenience of the family caregiver. It also follows recommendations made by the American Academy of Pediatrics (AAP) in regard to the "medical home" for children with significant disabilities . . . and with the guidelines outlined by the Centers for Medicare & Medicaid Services (CMS) . . . . In addition, Noah et al discusses how children who are chronically ill require the support of trained family caregivers with the help of skilled nursing support, as is requested in this case . . . .
>
> . . . .

> Giving this enrollee one hundred and twelve (112) hours per week of PDN care is appropriate for her level of care and the standards of care. The enrollee was previously approved for this level of nursing care, and her nursing needs have not decreased. . . . She requires around the clock medications, respiratory treatments, feedings and oral suctioning. The requested service allows the enrollee to attend school during the day and for the caregiver to sleep at night.
>
> [(Emphasis added).]

Because of its relevance to one of the issues, we note that, when summarizing petitioner's history, the IURO remarked that "[petitioner] does not have a one (1) on one (1) nurse during school hours."

It is not disputed the IURO's decision is binding upon United. <u>See</u> N.J.A.C. 11:24-8.7. In a letter dated May 6, 2016, United advised petitioner that the IURO had reversed United's decision to reduce the number of PDN hours to be provided for her care. The letter stated:

> Please be advised that [United] recently received a copy of the letter from [the IURO] regarding the status of the external appeal on behalf of [petitioner] for coverage of continued private duty nursing services for 112 hours/week from 3/1/16 forward. It is our understanding that you received a copy of this letter dated 5/5/16[,] which reversed [United's] denial of coverage for these services.
>
> Based on this review, the initial denial for continued private duty nursing services for 112

hours/week from 3/1/16 forward has been withdrawn, and the services are approved.

Thereafter, on an unspecified date in June or July 2016,[1] United faxed an "Authorization Letter" to the nursing agency that provided private nurses to petitioner. That letter advised the nursing agency that 35 of the 112 hours of PDN to which petitioner was entitled every week had to be utilized during school hours, "whether or not [petitioner] attends school."

Petitioner did not receive written notice of United's decision to allocate the PDN hours between home and school. Petitioner's father learned of United's decision from a telephone call placed to him from one of the nurses at the nursing agency. On July 19, 2016, petitioner forwarded a letter to the Division, claiming United had not provided her with a notice of the aforementioned change in her benefits and that United was unwilling to provide her with notice. In her letter, petitioner stated she was requesting a Medicaid fair hearing to challenge United's determination that 35 of 112 hours of PDN she was to receive each

---

[1] The parties state the Authorization Letter was sent on June 3, 2016, but the copy of the letter provided in the record does not show the date of the letter. There is a date of June 3, 2018 imprinted on the letter, but it is clear such date was generated by a facsimile server, not to mention it is unlikely the letter was drafted and sent to the nursing agency in 2018.

week had to be used while she was at school, as well as United's failure to provide notice to her of its determination.

The Division ultimately agreed to transmit the July 19, 2016 letter requesting a fair hearing to the Office of Administrative Law, where it was filed as a contested matter. After the fair hearing was scheduled, the matter was adjourned so the parties could brief the issue of whether United properly notified petitioner that it intended to allocate PDN services between petitioner's home and school. At the conclusion of oral argument on that issue, the ALJ determined petitioner had not been properly noticed and ordered United to do so.

The ALJ also stated he would schedule a fair hearing. Although he did not expressly state as such, in context it was clear the subject of that fair hearing was going to be whether United could allocate the hours of petitioner's PDN services between home and school. United then requested and the ALJ agreed to provide a written decision on the issue of notice. The ALJ thereafter noted his decision on notice was going to be an initial one and, thus, would have to be reviewed and a final decision rendered by the Director of the Division. The ALJ indicated he would schedule a fair hearing after the Division made its final decision.

A-0593-17T4

The salient points in the ALJ's written initial decision are as follows. Citing N.J.A.C. 10:60-5.1(b), the ALJ noted PDN services rendered to Medicaid beneficiaries receiving managed long-term support services are provided in the home. In addition, N.J.A.C. 10:49-10.4(a)(1) states a Medicaid agent must provide a Medicaid beneficiary timely advance notice of the agent's intention to terminate, reduce or suspend assistance for a beneficiary. There is no question United is a Medicaid agent and petitioner a Medicaid beneficiary.

The regulation states that the notice an agent is to provide to a beneficiary must be in writing, state the action the agent intends to take, detail the reasons for the proposed action, provide the specific regulations that support or the change in federal or state law that requires the action, and the beneficiary's right to a fair hearing. N.J.A.C. 10:49-10.4(a)(2). The beneficiary must receive such notice at least ten days before the action is taken. N.J.A.C. 10:49-10.4(a)(1).

The ALJ rejected United's argument that it did not make a new determination but, rather, had merely implemented the IURO's decision and, thus, was not obligated to provide petitioner with any notice of the subject action. The ALJ pointed out the IURO did not sanction the reduction of hours in the home. The matter was reviewed by the IURO because United reduced the number of PDN hours from 112 to 77 per week and petitioner challenged such

8

action. After reviewing the matter, the IURO found 112 hours of PDN per week medically necessary. The IURO did not state the hours should be allocated between home and school.

United also argued the following comment in the IURO's written decision justified United's allocation of hours between home and school: "[t]he requested service allows the enrollee to attend school during the day and for the caregiver to sleep at night." The ALJ observed that such comment:

> in no way set forth that a portion of the 112 hours were to be used while N.P. was at school; at best, this statement represented [IURO's] hope that sufficient PDN hours at home would have allowed N.P. to continue to be able to attend school.
>
> Nowhere in [the IURO's] decision did they specify that 35 hours per week were to be used at school and 77 hours per week were to be used at home.
>
> It was [United] who made the determination to reduce the number of weekly PDN hours to be provided at home from 112 to 77, and required that 35 weekly PDN hours were to be used at school. It was United Healthcare's medical director who "mandated that the PDN hours be used when the member attends school."

The ALJ concluded that, because it was United's determination to reduce PDN hours in the home, United was required to provide notice to petitioner in accordance with N.J.A.C. 10:49-10.4.

In addition, the ALJ observed federal regulation 42 C.F.R. 438.400(b) requires a MCO to provide notice that is comparable to that required in N.J.A.C. 10:49-10.4. Although the ALJ cited 42 C.F.R. 438.400(b), it is clear he intended to cite 42 C.F.R. 438.404(b). However, a reading of 42 C.F.R. 438.400(b) defines the term adverse benefit determination, which includes:

> (1) The denial or limited authorization of a requested service, including determinations based on the type or level of service, requirements for medical necessity, appropriateness, setting, or effectiveness of a covered benefit.
>
> (2) The reduction, suspension, or termination of a previously authorized service. . . .

42 C.F.R. 438.404(b) details the contents that the notice must provide to an enrollee of an adverse benefit determination.[2] The ALJ concluded United did not provide the kind of notice required by 42 C.F.R. 438.404(b).

The ALJ rejected United's argument that, given a fair hearing was to be scheduled on the underlying substantive issue, the lack of any notice to petitioner was harmless. The ALJ observed the notice a MCO is to provide an enrollee must include certain information, which United did not provide to

---

[2] We are aware 42 C.F.R. 438.400 and 42 C.F.R. 438.404 were amended effective July 5, 2016. However, with respect to the issues raised on appeal, the regulations remained essentially the same after the amendments went into effect.

petitioner. The ALJ noted, "[t]here can be no due process when a petitioner would be deprived of a meaningful hearing because he or she lacks knowledge as to how and why an agency has taken a certain action."

We note here N.J.A.C. 10:49-10.4(a)(2) requires that notice:

> means a written notice that includes a statement of the action the Medicaid Agent or DMAHS intends to take, reasons for the proposed departmental action, the specific regulations that support, or the change in Federal or State law that requires the action, the claimant's right to request a fair hearing, or in cases of a departmental action based on a change in law, the circumstances under which a hearing shall be granted, and the circumstances under which assistance shall be continued if a fair hearing is requested.

In pertinent part, 42 CFR 438.404(b) requires that a notice include the following:

> (b) Content of notice. The notice must explain the following:
>
> > (1) The adverse benefit determination the MCO . . . has made or intends to make.
> >
> > (2) The reasons for the adverse benefit determination, including the right of the enrollee to be provided upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the enrollee's adverse benefit determination. Such information includes medical necessity criteria, and any processes, strategies, or evidentiary standards used in setting coverage limits.

(3) The enrollee's right to request an appeal of the MCO's . . . adverse benefit determination, including inform ation on exhausting the MCO's . . . one level of appeal described at § 438.402(b) and the right to request a State fair hearing consistent with § 438.402(c).

(4) The procedures for exercising the rights specified in this paragraph (b).

(5) The circumstances under which an appeal process can be expedited and how to request it.

The ALJ ordered United to provide the appropriate notice to petitioner, and his initial decision was filed with the Director of the Division for her consideration.

In reversing the initial decision, the Director noted the IURO had observed that petitioner "does not have a one on one nurse during school hours." The Director also noted the IURO had commented that 112 hours of PDN services each week, "allows the enrollee to attend school during the day and for the caregiver to sleep at night."

In the Director's view, when United decided that some of petitioner's PDN services had to be rendered at school, United was not taking any independent action. Rather, United was implementing the IURO's binding decision. Therefore, the Director reasoned, United was not required to provide petitioner with notice as mandated in N.J.A.C. 10:49-10.4 and 42 CFR 438.404, as it was

12

not a new, adverse benefits determination. Finally, according to the Director, although petitioner asked for a fair hearing to contest the implementation of PDN services while she was at school, she failed to address such issue when before the ALJ.

II

We recognize our role in reviewing agency decisions is limited. <u>R.S. v. Div. of Med. Assistance & Health Servs.</u>, 434 N.J. Super. 250, 260-61 (App. Div. 2014). "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" <u>Id.</u> at 261 (quoting <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 25 (2011)). "Appellate courts, however, are not bound by an agency interpretation of a strictly legal issue when that interpretation is inaccurate or contrary to legislative objectives." <u>G.S. v. Dep't of Human Servs.</u>, 157 N.J. 161, 170 (1999) (citation omitted). To determine whether agency action is arbitrary, capricious, or unreasonable, we examine:

> (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.

13

[H.K. v. Div. of Med. Assistance & Health Servs., 379 N.J. Super. 321, 327 (App. Div. 2005) (quoting Public Serv. Elec. v. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985)).]

"The federal Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 to 1396w-5, mandates a joint federal-state program to provide medical assistance to individuals 'whose income and resources are insufficient to meet the costs of necessary medical services.'" E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 191 (App. Div. 2013) (quoting 42 U.S.C. § 1396 -1). Although a State is not required to participate, "[o]nce a state joins the program, it must comply with the Medicaid statute and federal regulations." Ibid.

"The New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D -1 to -19.5, authorizes New Jersey's participation in the federal Medicaid program." Id. at 192. DMAHS is the agency within the State Department of Human Services that administers the Medicaid program. N.J.S.A. 30:4D-7. Accordingly, DMAHS is responsible for protecting the interests of the New Jersey Medicaid program and its beneficiaries. E.B., 431 N.J. Super. at 192 (citing N.J.A.C. 10:49-11.1(b)).

In our view, for the reasons set forth in the ALJ's initial decision, United was obligated to provide petitioner with notice of its decision to use some of

petitioner's weekly allotment of PDN services while she was in school, and such notice had to be in accordance with N.J.A.C. 10:49-10.4(b) and 42 C.F.R. 438.404(b). United was not implementing the IURO's decision. The IURO did not state petitioner was not getting the kind of care she requires while at school or that the PDN hours allotted to her were to be divided between home and school. The statements the IURO made upon which respondents rely to support such argument are taken out of context. The IURO merely restored the number of PDN hours petitioner had been receiving in her home for years. Therefore, United was not advancing the IURO's decision when United divided PDN services between home and school. United's decision to allocate PDN services between home and school was a new and adverse benefits determination. Therefore, petitioner was entitled to proper notice before such determination was implemented.

Further, petitioner sought a fair hearing on the question of notice and whether United was authorized to allocate petitioner's PDN services between home and school. For the reasons previously stated, petitioner did not waive her right to a fair hearing on the latter issue. The record reveals the parties' expectation was that once there was a final decision from the Division on the notice issue, a fair hearing on the substantive one was to be scheduled.

15

In addition, that there is to be a fair hearing on the substantive issue does not overcome United's failure to provide proper notice. Among other things, petitioner is entitled to know before the fair hearing United's reasons for its proposed action and the law upon which it relies in support of such proposed action. Petitioner is also entitled access to and copies of those records that are relevant to United's determination. See N.J.A.C. 10:49-10.4(b) and 42 C.F.R. 438.404(b).

To the extent we have not specifically addressed an argument raised by respondents, it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

The final decision is reversed and we remand this matter to the ALJ to oversee that United provides the appropriate notice to petitioner, and to continue this contested matter and address petitioner's substantive challenges to United's adverse benefits determination.

Reversed and remanded to the ALJ for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0593-17T4